# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

LEAGUE OF WOMEN VOTERS OF
FLORIDA, INC., et al.,

     *Plaintiffs*,

     v.                      Case No. 4:23-cv-216-MW/MAF

CORD BYRD, in his official capacity as
Florida Secretary of State, et al.,

     *Defendants.*

_____/

## SECRETARY OF STATE'S RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW

1

# INTRODUCTION

Plaintiffs seek extraordinary relief. None is warranted. The provisions of Florida's election code that Plaintiffs challenge will not affect them until September 30, 2023. Till then, much of the dispute must shift to Florida's rulemaking process. Rulemaking will flesh out definitional issues (resolving many of Plaintiffs' concerns about vagueness and overbreadth), provide greater clarity about the information Plaintiffs may keep (such as public information), provide forms (for the receipts Plaintiffs must provide to voters), and otherwise crystalize the issues in dispute. Allowing this process to run its course would also further foundational principles of comity and federalism.

Comity and federalism aside, Plaintiffs are not entitled to the relief they seek. The provisions they challenge concern third-party voter registration organizations ("3PVROs"). 3PVROs remain the source of endless complaints. Regulating them makes sense. As does trying different policy approaches to see what works.

The Florida Legislature gets to choose the policies. There's nothing extraordinary about that. The U.S. and Florida Constitutions entrust the Florida Legislature with authority to make such changes. *See* U.S. Const. art I., § 4; Fla. Const. art. III, § 1; Fla. Const. art. VI, § 1. The Florida Legislature exercised its prerogative in passing Senate Bill 7050 ("SB 7050"), which the Governor signed into law. *See* Ch. 2023-120, Laws of Florida ("2023 Law"). This Court should now decline Plaintiffs' invitation to upend the measured policy changes. It should deny the motion for preliminary injunction.

## STATEMENT OF THE CASE AND FACTS

### I.     The provisions of Florida law being challenged.

Plaintiffs League of Women Voters of Florida, Inc. and League of Women Voters of Florida Education Fund ("Plaintiffs") claim that the following provisions of the 2023 Law governing section 97.0575 3PVROs violate federal law:

1.  Section 97.0575(1)(e), Florida Statutes, which requires a 3PVRO to affirm that each person collecting or handling voter registration applications on behalf of the 3PVRO has not been convicted of a felony violation of the Florida Election Code or of a felony violation of an offense specified in section 98.0751(2)(c) (murder), section 98.0751(2)(b) (sexual offenses), section 825.103 (exploitation of an elderly person or disabled adult), chapter 817 (fraudulent practices), chapter 831 (forgery and counterfeiting), and chapter 837 (perjury), and provides that a 3PVRO is liable for a $50,000 fine for each felon who collects or handles voter registration applications on behalf of the 3PVRO ("**Felon Volunteer Restriction**").

2.  Section 97.0575(1)(f), Florida Statutes, which requires a 3PVRO to affirm that each person collecting or handling voter registration applications on behalf of the 3PVRO is a citizen of the United States, and provides that a 3PVRO is liable for a $50,000 fine for each non-U.S. citizen person who collects or handles voter registration applications on behalf of the 3PVRO ("**Non-U.S. Citizen Volunteer Restriction**").[1]

3.  Section 97.0575(4), Florida Statutes, which requires a 3PVRO that collects voter registration applications to provide a receipt (which the Division of Elections is statutorily required to adopt a uniform format for by rule by October 1, 2023) to an applicant upon accepting possession of his or her application including the name of the applicant, the date the application is received, the name of the 3PVRO, the name of the 3PVRO agent, the applicant's political party affiliation,

---

[1] This provision and the Felon Volunteer Restriction apply to employees as well. For consistency's sake, they will be referred to as the Non-U.S. Citizen Restriction and the Felon Volunteer Restriction.

and the County in which the applicant resides ("**Receipt Requirement**").

4. Section 97.0575(5)(a), Florida Statutes, which provides in relevant part:

   a. A 3PVRO is liable for a $50 fine per each day late, up to $2,500 (previously no cap), for each voter registration application received by the division or supervisor of elections more than 10 days (decreased from 14 days) after the application was received by the 3PVRO, and a $2,500 fine (up from $250) for each such application if the 3PVRO or its agent "acted willfully";

   b. A 3PVRO is liable for a $100 fine per each day late, up to $5,000 (previously no cap), for each voter registration application received by the division or supervisor of elections after the book-closing deadline, and a $5,000 fine (up from $500) for each such application if the 3PVRO or its agent "acted willfully";

   c. A 3PVRO is liable for a $5,000 fine (up from $1,000) for any voter registration application not submitted to the Division of Elections or supervisor of elections in the county in which the applicant resides if the 3PVRO or its agent "acted willfully";

   d. The maximum aggregate fine which may be assessed against a 3PVRO pursuant to this paragraph in a calendar year is $250,000 (up from $50,000) (collectively "**Late/Incorrectly Returned Application Fines Provision**").

5. Section 97.0575(7), Florida Statutes, which prohibits a person collecting voter registration applications on behalf of a 3PVRO from retaining a voter's application or a voter's personal information, such as the voter's Florida driver license number, Florida identification card number, social security number, or signature, for any reason other than to provide such application or information to the 3PVRO in compliance with this section, and provides that a person who violates this section commits a third degree felony punishable by up to 5 years in prison and a $5,000 fine ("**Voter Information Retention Restriction**").

4

6. Section 97.0575(1)(d), Florida Statutes, which provides that a 3PVRO registration must specify the specific general election cycle for which the 3PVRO is registering persons to vote and section 97.0575(2), Florida Statutes, which further provides that a 3PVRO registration automatically expires at the conclusion of the specific general election cycle for which the 3PVRO is registered (collectively "**Re-Registration Requirement**").

*See* ECF No. 1 (Plaintiffs' Complaint).[2]  Plaintiffs only seek to preliminarily enjoin the Secretary's and the Attorney General's respective enforcement of the Felon Volunteer Restriction, the Non-U.S. Citizen Volunteer Restriction, the Receipt Requirement, and the Voter Information Retention Restriction. *See* ECF No. 27 (Plaintiffs' Preliminary-Injunction Motion).

## II.   The 2023 Law builds on Florida's solid foundation.

The 2023 Law builds upon the solid foundation of Florida's election laws by amending numerous provisions of chapters 97, 98, 99, 100, 101, 102, 103, 104, 105, and 106 of the Florida Election Code. *See* Ch. 2023-120, pp. 1-5, Laws of Fla. (summarizing the statutory provisions amended by the 2023 Law), http://laws.flrules.org/2023/120; *see also* § 97.011, Fla. Stat. (explaining that chapters 97 to 106 of the Florida Statutes constitute the "Florida Election Code"). Updates to the Florida Election Code include:

- Mandating that all those whose duties require verification of signatures to undergo signature match training, Ch. 2023-120, § 1, Laws of Fla.;

- Regulating 3PVROs, a frequent source of complaints, *id.* at § 4;

---

[2] Two other challenges have been brought against specific provisions contained in the 2023 Law. 4:23-cv-215 (N.D. Fla. 2023); 4:23-cv-218 (N.D. Fla. 2023).

- Ensuring voter information cards provide voters with up-to-date access to their most current polling place locations, *id.* at § 5;

- Increasing information governmental entities must provide for list registration maintenance purposes, *id.* at § 11;

- Enhancing requirements for post-election reports, *id.* at §§ 12, 36;

- Mandating that candidate oaths provide voters with notice of outstanding fines, fees, or penalties owed by candidates for violations of state and local ethics requirements, *id.* at § 15, 43;

- Closing the "ghost candidate" loophole in both primary and general elections, *id.* at § 23;

- Narrowing the category of individuals who can request vote-by-mail ballots on behalf of a voter, *id.* at § 26;

- Clarifying the prohibition against voting more than one ballot at any election, *id.* at § 41; and

- Ensuring that voter guides are transparent, *id.* at § 49.

The Florida Legislature enacted the 2023 Law—including the challenged provisions applicable to 3PVROs—to further Florida's important interests in, among other things, safeguarding election integrity, preventing voter fraud, and promoting uniformity, efficiency, and confidence in the election system as a whole.[3]  The process used to enact the 2023 Law was run-of-the mill.

---

[3] *See, e.g.*, Fla. S. Floor, Debate Regarding SB 7050 – Part 2, at 1:43:18-1:43:53 (April 26, 2023) (Bill Sponsor Senator Burgess: "Related to third-party voter registration organizations, since 2005 there have been regulations on 3PVROs. In every election cycle, there are issues with certain actors within these organizations. . . . I agree that voting is a sacred part of our democracy. And that's why our bill holds those who are

Florida's most recent sixty-day legislative session took place from March 7 to May 5, 2023. *See* Art. II, § 3(b), (d), Fla. Const. SB 7050—which became the 2023 Law—was introduced on March 30, 2023. *See* Fla. S. Bill History of SB 7050 (2023), https://www.flsenate.gov/Session/Bill/2023/7050/?Tab=BillHistory. Like most bills, SB 7050 was the subject of various revisions. *See id.* After weeks of committee hearings, floor hearings, amendments, and debate, the Senate on April 26 and the House on April 28 passed the final text of SB 7050. *See id.* Governor DeSantis approved SB 7050 on May 24, 2023. *See* Ch. 2023-120, p. 55, Laws of Fla.

The 2023 Law is consistent with the Legislature's longstanding regulation of 3PVROs as fiduciaries. Florida law provides that "[a] third-party voter registration

---

custodians of a person's access to voting to a very high standard."), https://thefloridachannel.org/videos/4-26-23-senate-session-part-2/; Fla. S. Floor, Debate Regarding SB 7050 – Part 1, at 59:57-1:44 (April 26, 2023) (Senator Burgess: "The reality is if a third-party voter registration organization fails to submit timely somebody's voter registration, that voter is disenfranchised. . . . And so that's why it's important that we continue to ensure that 3PVROs are adhering to their mission and meeting a standard that we're laying out in law to protect their fiduciary responsibility that they voluntarily seek by asking for voter [sic] registrations."), https://thefloridachannel.org/videos/4-26-23-senate-session-part-1/; Fla. S. Comm. on Fiscal Policy, Debate Regarding SB 7050, at 7:52:20-7:52:25 (April 20, 2023) (Senator Burgess: "Why are we making [all] these changes [in SB 7050]? Well we're doing a great job, but we can always improve in our process."), https://thefloridachannel.org/videos/4-20-23-senate-committee-on-fiscal-policy/; Fla. S. Comm. on Ethics and Elections, Debate Regarding SB 7050, at 23:31-23:40 (April 4, 2023) (Senator Burgess: "This bill strengthens requirements for third-party voter registration organizations to protect individuals who entrust their personal information and voter registration applications to them."), https://thefloridachannel.org/videos/4-4-23-senate-committee-on-ethics-and-elections/.

organization that collects voter registration applications serves as a *fiduciary* to the applicant." § 97.0575(3)(a), Fla. Stat. (emphasis added); *see* Ch. 2005-277, Laws of Fla. (creating section 97.0575, Florida Statutes). A 3PVRO's primary duty as a fiduciary—a role it voluntarily undertakes—is ensuring that each voter registration application entrusted to it by an applicant is "promptly delivered" to the Division of Elections or the supervisor of elections in the county in which the applicant resides "within [the statutorily prescribed number of] days after the application [is] completed by the applicant, but not after registration closes for the next ensuing election." § 97.0575(3)(a), Fla. Stat. If a 3PVRO fails to deliver a voter registration application prior to the book-closing deadline, that applicant's right to vote is extinguished. *See* § 97.053(2), Fla. Stat. (explaining that an applicant is not eligible to vote in an election unless their completed voter registration application is received by a voter registration official and verified prior to the date of book closing for an election); § 97.055, Fla. Stat. (establishing the book-closing deadline for elections).

Over the years, Florida has amended section 97.0575 on several occasions to ensure that 3PVROs are adhering to their fiduciary duties. *See* Ch. 2007-30, § 2, Laws of Fla.; Ch. 2011-40, § 4, Laws of Fla.; Ch. 2021-11, § 7, Laws of Fla.[4] The 2023 Law

---

[4] Florida law imposes fiduciary duties on a variety of other relationships including brokers to clients, §§ 475.01, 475.278, Fla. Stat., trustees to beneficiaries, § 518.11, Fla. Stat., managing members of LLCs to members, § 605.04091, Fla. Stat., corporate directors to shareholders, § 607.0830, Fla. Stat., general partners to limited partners, § 620.1408, Fla. Stat., partners to partners, § 620.8404, Fla. Stat., and guardians to wards, § 744.446, Fla. Stat. Florida has a long history of recognizing fiduciary relationships and

was not enacted in a vacuum. While many 3PVROs ably fulfill their fiduciary duties, recent history shows that some unfortunately do not. *See generally* App. at 89 (Declaration of Andrew Darlington).

As explained in the declaration of Andrew Darlington, the current Director of the Department of State's Office of Election Crimes and Security ("Office"), the Office regularly receives complaints of 3PVROs violating Florida's election laws via a variety of sources including election fraud complaints, 3PVRO complaints, and complaints from supervisors of elections or their staff. App. at 90-91. Relatedly, Florida law requires the Office to submit an annual report to the President of the Senate, the Speaker of the House of Representatives, and the Governor detailing information on the Office's investigations of alleged election law violations or election irregularities conducted during the prior calendar year. App. at 90-91; *see* § 97.022(7), Fla. Stat. The Office submitted its most recent report on January 15, 2023 for the 2022 calendar year, which is incorporated by reference in Director Darlington's declaration and attached hereto. App. at 90-91; *see generally* App. at 97 (January 15, 2023 Florida Department of State Office of Election Crimes and Security Report). As evidenced in the report, during 2022, the Office reviewed a large number of complaints involving 3PVROs. App. at

---

their concomitant duties. *See, e.g.*, *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002) (explaining that "[a] fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation" (quoting Restatement (Second) of Torts § 874 cmt. a.)); *Quinn v. Phipps*, 113 So. 419, 421 (Fla. 1927) (describing the general parameters of a fiduciary relationship).

97-188. Notably, the Office reviewed approximately 3,077 voter registration applications that were collected and submitted untimely by 3PVROs, in violation of section 97.0575, Florida Statutes, and assessed statutory fines against those 3PVROs that did not comply with the statutory requirements. App. at 90-91.

Also incorporated by reference in Director Darlington's declaration and attached hereto are a sampling of 3PVRO complaints received, 3PVRO fine letters issued, and 3PVRO referrals made by the Department of State between the years 2016 and 2023. App. at 91; *see generally* App. at 362. The Office is concerned with the quantity and types of violations of Florida's election laws by 3PVROs alleged in or evidenced by these documents (especially those that resulted in the assessment of fines, those that resulted in referrals to other agencies for further investigation, and those that resulted in criminal prosecution). App. at 91. The types of violations alleged in or evidenced by these documents include among other things:

> a. 3PVROs failing to deliver voter registration applications to election officials before the book closing deadline for federal or state elections. (Whenever a new applicant's voter registration application is not delivered by a 3PVRO prior to the book closing deadline, that voter is deprived of the right to vote in the next election.)
>
> b. 3PVROs failing to deliver voter registration applications to the division or the supervisor of elections in the county in which the applicant resides within 14 days after applications are completed by applicants.
>
> c. 3PVROs failing to deliver voter registration applications to the correct supervisor of elections in the county in which the applicant resides.

      d. 3PVRO agents charged or alleged with violation of a criminal statute.

App. at 91. Also incorporated by reference to Director Darlington's declaration are news articles, a press release, and a letter that discuss 3PVRO issues. App. at 960.

Director Darlington's declaration further explains that, generally speaking, the 2023 Law Florida promotes the State's interests in safeguarding election integrity, preventing voter fraud, and promoting uniformity, efficiency, and confidence in the election system as a whole. App. at 91-95. The 2023 Law reflects the State's continuing efforts to protect the right to vote by ensuring that 3PVROs are abiding by their fiduciary duties under Florida law. App. at 91-95.

The provisions of the 2023 Law that Plaintiffs challenge are reasonable, rational, constitutional, and legal voting regulations. Notwithstanding these facts, Plaintiffs filed suit and are seeking preliminary injunctive relief.

## III. The 3PVRO-related provisions won't apply to Plaintiffs until September 30, 2023.

As noted above, Plaintiffs seek to enjoin enforcement of the Felon Volunteer Restriction, the Non-U.S. Citizen Volunteer Restriction, the Receipt Requirement, and the Voter Information Retention Restriction. They fear that the challenged provisions of the 2023 Law (and their perceived harms) will take effect on July 1, 2023. Not true.

The 2023 Law states that "this act shall take effect July 1, 2023" "[e]xcept as otherwise expressly provided in this act." Ch. 2023-120, § 52, Laws of Fla. The 2023

Law goes on to say that "[t]he requirements of [section 97.0575] are retroactive for any third-party voter registration organization registered with the department as of July 1, 2023, and must be complied with within 90 days after the department provides notice to the third-party voter registration organization of the requirements contained in this section." *Id.* at § 4 (renumbering and amending § 97.0575(12), Fla. Stat.). The Department of State intends to issue the requisite notice—which starts the ninety-day clock within which Plaintiffs' must comply with the new requirements—on July 1, 2023. Accordingly, at the earliest, Plaintiffs need not comply with the 2023 Law's changes to section 97.0575 until September 30, 2023. *See* § 97.0575(12), Fla. Stat.

Indeed, Notices of Rule Development regarding the Rules governing 3PVROs and vote-by-mail ballots were published on June 22, 2023 and Plaintiffs (along with other stakeholders) are invited to the workshop scheduled for July 10, 2023 to participate in crafting the language and forms. *See* Fla. Admin. Code. R. 1S-2.042 (Third-Party Voter Registration Organizations); Fla. Admin. Code R. 1S-2.055 (Vote-by-mail Requests); Fla. Admin. Reg. § 1, Vol. 49, No. 122[5]; *see also* § 97.012(1)-(2), Fla. Stat.; § 97.012(9), Fla. Stat.; § 101.62(1)(a), Fla. Stat.; § 101.62(6), Fla. Stat.; § 101.662, Fla. Stat.; § 120.54, Fla. Stat.  Copies of the current drafts of Rule language are attached hereto. App. at 1-87.  Florida law authorizes stakeholders and members of the public to provide

---

[5] Available at: http://www.FLRules.org/gateway/View_Notice.asp?id=27257308  (3PVRO); http://www.FLRules.org/gateway/View_Notice.asp?id=27257405 (vote-by-mail).

comments to the Division about the proposed rules, including any proposed changes thereto. *See generally* § 120.54, Fla. Stat. Plaintiffs are welcome to share their perspective.

The proposed rules concern several of the provisions at issue before this Court. Among other things, the rules provide a mechanism by which 3PVROs may ensure their compliance with the Felon Volunteer Restriction and the Non-U.S. Citizen Volunteer Restriction (and avoid the associated fines). They elucidate the meaning of the phrase "collecting or handling" as used in the Felon Volunteer Restriction and the Non-U.S. Citizen Volunteer Restriction. They propose that 3PVROs may retain the receipt mandated by the Receipt Requirement. They clarify the meaning of the phrase "voter's personal information" as used in the Voter Information Retention Restriction.

If adopted, the proposed rules will almost certainly moot various aspects of Plaintiffs' claims and their related request for preliminary injunctive relief. At the very least, any finalized rules have the potential to narrow the scope of the issues now before this Court. And, rulemaking should be complete prior to the challenged requirements becoming effective on October 1, 2023 (including a form for the Receipt Requirement).

No preliminary injunction is appropriate or necessary.

## RELEVANT LEGAL STANDARD

The "extraordinary and drastic remedy" of a preliminary injunction, *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998), requires the movant to clearly establish: (1) a substantial likelihood of success on the merits; (2) irreparable harm absent the injunction; (3) harm to the movant that outweighs any harm to the opposing

party; and (4) that the injunction furthers the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). The first two factors are the most important and, when the State is the non-moving party, the last two factors merge. *Swain v. Junior*, 958 F.3d 1081, 1088, 1091 (11th Cir. 2020). The opposing party also doesn't have "the burden of coming forward and presenting its case against a preliminary injunction." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1136 (11th Cir. 2005) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 442 (1974)). And, absent class certification, "injunctive relief should be limited in scope to the extent necessary to protect the interests of the parties." *Ga. Advoc. Off. v. Jackson*, 4 F.4th 1200, 1209 (11th Cir. 2021) (cleaned up) (emphasis added).

## ARGUMENT

Given the ongoing rulemaking, *Burford* abstention (or deferral of any preliminary injunction until after September 30, 2023) is appropriate. Alternatively, this Court should deny the motion because Plaintiffs can't meet any of the four prongs necessary to obtain a preliminary injunction. There is no likelihood of success on constitutional or statutory grounds. There is no irreparable harm. And the equities and public interest tilt decidedly in the State's favor.

## I.   THIS COURT SHOULD ABSTAIN OR OTHERWISE DEFER RULING ON PLAINTIFFS' PRELIMINARY-INJUNCTION MOTION.

### A.   *Burford* abstention is appropriate at this juncture.

Federal courts should abstain from deciding cases where doing so furthers the "paramount interests of another sovereign" and the "principles of comity and federalism." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996). Those interests and principles weigh in favor of abstention "when, by exercising its jurisdiction, a federal court would interfere with an ongoing state administrative proceeding or action." *Deal v. Tugalo Gas Co.*, 991 F.3d 1313 (11th Cir. 2021). In other words, such abstention—*Burford* abstention—is appropriate to avoid "disrupt[ion] [of] a state's effort, through its administrative agencies, to achieve uniformity and consistency in addressing a problem." *Siegel*, 234 F.3d at 1173.

As in this response, and in the attachments, the State is in the process of rulemaking. That process should conclude before October 1, 2023. Federal judicial intervention before then would interfere with the rulemaking process; however, rulemaking has the potential to resolve many of the issues—such as vagueness and overbreadth—now before this Court. Any remaining issues would be further streamlined. If ever a case called for abstention, this is it.  And so, the Secretary asks this Court to exercise its discretion and abstain. *Cf. Harman v. Forssenius*, 380 U.S. 528, 534 (1965) ("Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law,

abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication.").

**B.    Deferring is otherwise appropriate at this juncture.**

Or this Court can defer ruling on Plaintiffs' motion until after September 30, 2023. This is for two reasons.

*First*, the requested injunctive relief is unnecessary to maintain the status quo. "The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *SunTrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001). As explained previously, notwithstanding the July 1, 2023 effective date of the 2023 Law, Plaintiffs need not comply with any of the 2023 Law's changes to section 97.0575 until September 30, 2023. *See* § 97.0575(12), Fla. Stat. That's because the Department's July 1, 2023 notice to Plaintiffs will start running the ninety-day clock within which Plaintiffs' must comply with such changes. *See id.* In other words, Plaintiffs' request to preliminarily enjoin the enforcement of various provisions of section 97.0575—i.e., the Felon Volunteer Restriction, the Non-U.S. Citizen Volunteer Restriction, the Receipt Requirement, and the Voter Information Retention Restriction—is already being accomplished for a ninety-day period by automatic operation of Florida law. No temporary injunction is necessary to maintain the status quo at this time.

*Second*, and relatedly, many aspects of Plaintiffs' challenges to various provisions of the 2023 Law will almost certainly become moot within the ninety-day period. Among other things, Florida law provides the Department with broad authority to "adopt by rule uniform standards for the proper and equitable interpretation and implementation . . . of the Election Code" and "[p]rovide uniform standards for the proper and equitable implementation of the registration laws by administrative rule." § 97.012(1)-(2), Fla. Stat.; *see* § 120.54, Fla. Stat. Consistent with those and other grants of authority, the Department of State has initiated rulemaking to implement the 2023 Law's changes to section 97.0575 3PVROs and section 101.62, requests for vote-by-mail ballots. *See also* § 97.012(9), Fla. Stat.; § 101.62(1)(a), Fla. Stat.; § 101.62(6), Fla. Stat.; § 101.662, Fla. Stat. The rules will have a real-world winnowing effect on Plaintiffs' claims and will necessarily narrow the scope of injunctive relief being sought by them. And once final, there is no reasonable expectation that the Department will repeal them. *See A.R. v. Sec'y Fla. Ag. for Health Care Admin.*, 769 F. App'x 718, 724-28 (11th Cir. 2019) (discussing the standards for mootness and determining that the district court properly dismissed certain counts within the plaintiffs' complaint as "moot" after the Florida Agency for Healthcare Administration promulgated a new rule).

Under the circumstances, it makes little sense to decide Plaintiffs' preliminary-injunction motion on a truncated timeline during a ninety-day period. Again, Plaintiffs are not yet affected by the changes to the 2023 Law they seek to enjoin. The rulemaking will clarify state law, through a state process. Those clarifications will resolve many of

the claims now before this Court such as how to comply with the Felon Volunteer Restriction and the Non-U.S. Citizen Volunteer Restriction. Interpretive concerns such as the meaning of phrases like "collecting or handling" and "voter's personal information" will also be addressed. So the State asks this Court to stay its hand.

## II.   ALTERNATIVELY, THIS COURT SHOULD DENY PLAINTIFFS' PRELIMINARY-INJUNCTION MOTION.

If the Court is inclined to rule on Plaintiffs' preliminary-injunction motion, the motion should be denied.

### A.   Plaintiffs are unlikely to succeed on the merits on their Felon Volunteer Restriction challenges.[6]

#### i.   The Felon Volunteer Restriction isn't vague.

**a.** Plaintiffs are unlikely to succeed on the merits of their vagueness challenge against the Felon Volunteer Restriction. "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). A vague statute involves not just points of

---

[6] Plaintiffs contend that they have standing to challenge the Felon Volunteer Restriction, the Non-U.S. Citizen Volunteer Restriction, the Receipt Requirement, and the Voter Information Retention Restriction. Given the expedited briefing schedule, the Secretary generally focuses his attention on Plaintiffs' preliminary-injunction arguments instead of Plaintiffs' standing arguments. Nonetheless, this Court has "an independent obligation to examine" its "own jurisdiction" and may do so sua sponte. *Bischoff v. Osceola Cnty.*, 222 F.3d 874, 878 (11th Cir. 2000) (cleaned up).

imprecision or confusion, but "hopeless indeterminacy" and "grave uncertainty." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1213-14 (2018). "Courts should not lightly declare laws to be void for vagueness." *League of Women Voters of Fla. Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 946 (11th Cir. 2023). "Facial vagueness [only] occurs when a statute is utterly devoid of a standard of conduct so that it simply has no core and cannot be validly applied to any conduct." *Id.* (citation omitted).

**b.** Plaintiffs argue that the Felon Volunteer Restriction is vague because the statute does not define what it means to "collect[] or handl[e]" voter registration applications. *See* § 97.0575(1)(e)-(f), Fla. Stat. That's wrong. "[A] statute is not ambiguous merely because it contains a term without a statutory definition." *United States v. Sepulveda*, 115 F.3d 882, 886 n.9 (11th Cir. 1997).

The plain meaning of the words "collect" and "handle" allay any concerns. "[C]ollect" is commonly understood to mean "to gather" "from a number of persons." *Merriam-Webster's Collegiate Dictionary* 243 (11th ed. 2005). "[H]andle," ordinarily means "to manage with the hands." *Merriam-Webster's Collegiate Dictionary* 565 (11th ed. 2005); *see The American Heritage Dictionary* 796 (5th ed. 2018) (same). Both words thus require some physical custody. The physical custody requirement becomes clearer still when considering the words together. For example, a postman who "collects" letters from mailboxes takes physical possession of the letters. He continues to "handle" the letters on behalf of the senders until he gives them to the recipient or another postman responsible for processing the letters.

"Person[s] collecting or handling voter registration applications on behalf of [3PVROs]" are much like the postman. *See* § 97.0575(5)(a), Fla. Stat.; *see also* § 97.053, Fla. Stat. (providing an avenue for the "hand deliver[y]" of voter registration applications by the applicant or a "third party"). They "collect" physical applications directly from applicants, and continue to "handle" the physical applications on behalf of the applicants until taking the applications to the Division of Elections, the supervisor of elections for the county in which the applicant resides, or to another agent of the 3PVRO responsible for actually delivering the applications to election officials.

The statute thus provides people of reasonable intelligence with notice of what "collecting or handling" voter registration applications means: physically collecting or handling completed voter registration applications—not *blank* forms—or otherwise exercising custody over completed voter registration applications. Contrary to Plaintiffs' position, there are no restrictions on translation of applications, greeting applicants, or asking people to fill a voter registration form. And it's equally clear that a 3PVRO volunteer with a stack full of completed applications in his car falls within the statute's ambit, but one with blank forms does not.

**c.** To the extent that Plaintiffs harbor doubt about the meaning of the statute because the word "handle" can also mean "to have overall responsibility for supervising or directing," *Merriam-Webster's Collegiate Dictionary* 565 (11th ed. 2005), they ignore the statute's context. The statutory prohibition applies to "collecting or handling *voter registration applications*," § 97.0575(1)(e), Fla. Stat. (emphasis added), not collecting or

handling *persons* who collect or handle voter registration applications. Had the Florida Legislature intended to accomplish what the Plaintiffs say, it could have done so by stating "collecting or handling, or supervising or directing the collecting or handling, of voter registration applications." It didn't.

**d.** Lastly, Plaintiffs assert that the Felon Volunteer Restriction is vague because it fails to specify the full scope of people it disqualifies. Plaintiffs fail to acknowledge, however, that the text of the statute provides people of reasonable intelligence with notice of the classes of felons to whom the restriction applies. That class consists of those "convicted of a felony violation of the [Florida] Election Code" or "a felony violation of an offense specified in" section "98.0751(2)(c)" (murder), section "98.0751(2)(b)" (sexual offenses), section "825.103" (exploitation of an elderly person or disabled adult), chapter "817" (fraudulent practices), chapter "831" (forgery and counterfeiting), and chapter "837" (perjury). § 97.0575(1)(e), Fla. Stat. If people are convicted of one of the enumerated felonies, they are prohibited from collecting or handling voter registration applications on behalf of a 3PVRO. It doesn't matter whether the felon's voting rights have been restored under article VI, section 4 of the Florida Constitution or whether they have received executive clemency under article IV, section 8 of the Florida Constitution.[7] The State has decided—in clear terms—that certain felons cannot be trusted with voter registration forms.

---

[7] Plaintiffs assert that the Felon Volunteer Restriction is vague as to whether 3PVROs may rely on persons convicted of comparable felonies under federal law or in

### ii.  The Felon Volunteer Restriction isn't overbroad.

Plaintiffs are also unlikely to succeed on the merits of their overbreadth challenge against the Felon Volunteer Restriction. A statute is impermissibly overbroad under the First Amendment—and facially unconstitutional—if its "application to protected speech [is] substantial, not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications." *League of Women Voters*, 66 F.4th at 948 (quoting *Virginia v. Hicks*, 539 U.S. 113, 120 (2003)). "The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Williams*, 553 U.S. 285, 293 (2008). The second is to determine whether the challenged statute as construed prohibits a substantial amount of protected speech in comparison to its legitimate sweep. *See id.* at 297. "The overbreadth doctrine is 'strong medicine' that is used 'sparingly and only as a last resort.'" *N.Y. State Club Ass'n v. City of N.Y.*,

---

other states, but Plaintiffs lack standing to raise that argument. Plaintiffs have identified no felon with a federal or out-of-state conviction that: (a) is comparable to the felony convictions identified in section 97.0575(1)(e), Florida Statutes, and (b) desires to collect voter registration applications on behalf of Plaintiffs. Regardless, the Secretary reads the statutory prohibition to apply to any person who has been convicted of any similar felony offense committed in another jurisdiction—including any federal or out-of-state conviction—which would be an offense listed in the statute if it had been committed in violation of the laws of this State. *See* § 97.0575(1)(e), Fla. Stat. That is a reasonable construction of the statute, as it is one already contemplated by Florida law. *See* § 98.0751(2)(b)-(c), Fla. Stat. (defining "murder" and "felony sexual offenses" to include "[a]ny similar offense committed in another jurisdiction which would be an offense listed in this paragraph if it had been committed in violation of the laws of this state").

487 U.S. 1, 14 (1988) (citation omitted). "[P]erfection is not required." *Cheshire Bridge Holdings, LLC v. City of Atlanta*, 15 F.4th 1362, 1378 (11th Cir. 2021) (citation omitted).

The Felon Volunteer Restriction is not overbroad. As explained above, the statute prohibits certain classes of felons from collecting or handling voter registration applications. No more. No less. As explained in greater detail below, the statute doesn't concern protected speech—much less a substantial amount of protected speech. Overbreadth isn't implicated. And, as further explained below, even if the statute did encompass some protected speech, the State's interests outweigh any potential First Amendment concerns.

        **iii.   The Felon Volunteer Restriction satisfies the First Amendment.**

**a.** More broadly, Plaintiffs are unlikely to succeed on their First Amendment challenge to the Felon Volunteer Restriction. The First Amendment protects the freedom of speech and the freedom to associate. At its heart is the freedom to engage in "political discourse" and "direct one-on-one communication" about politics. *Meyer v. Grant*, 486 U.S. 414, 424 (1988). A related right is the freedom to politically associate. *NAACP v. Button*, 371 U.S. 415, 417 (1961). That said, the First Amendment doesn't protect non-expressive conduct. *Rumsfeld v. FAIR*, 547 U.S. 47, 65-66 (2006). If conduct isn't "inherently expressive," it doesn't come within the First Amendment's ambit. *Id.* Otherwise, "an apparently limitless variety of conduct can be labeled 'speech' whenever

the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376 (1968).

**b.** In this instance, Plaintiffs say that the Felon Volunteer Restriction infringes on their First Amendment rights to engage in core political speech and to politically associate. That's because a subset of Plaintiffs' volunteers—convicted felons—can't engage with eligible voters, and that Plaintiff organization can't enlist the support of those convicted felons. The problem with this argument is twofold.

*First*, the argument depends, in part, on an expansive reading of the prohibition imposed. To reiterate, based on text and context, the Secretary interprets "collecting or handling voter registration applications on behalf of" 3PVROs as physically collecting or handling *completed* voter-registration applications on behalf of 3PVROs. That prohibition doesn't apply to *blank* applications. And that prohibition doesn't concern the *supervision* of those who collect or handle completed applications. The rulemaking now underway will test that interpretation. At the very least, because the Secretary must promote election uniformity, his interpretation of this provision of the State's election-code provision should be given weight. *See Hamer v. Musselwhite*, 376 F.2d 479, 481 (5th Cir. 1967). That is the interpretation this Court must assess. *See generally Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

*Second,* regulating who can collect and handle *completed* voter-registration applications is a regulation of non-expressive conduct, not speech. Convicted felons can still walk up to eligible voters, discuss the importance of voting and registering to

vote, discuss politics more generally, encourage someone to register to vote, and even provide a blank voter-registration application. The felons just can't collect or handle completed voter-registration forms with critical applicant-specific information on the completed form. Collecting or handling completed voter registration forms conveys no message; the person with custody simply acts as a fiduciary for the registrant. Neither speech nor expressive conduct is thus being regulated. *See Voting for Am., Inc. v. Steen*, 732 F.3d 382, 391 (5th Cir. 2013) (regulations concerning "the receipt and delivery of completed voter-registration applications" are "non-expressive activities"); *LWVFL v. Browning*, 575 F. Supp. 2d 1298, 1319 (S.D. Fla. 2008) (the "collection and handling of voter registration applications is not inherently expressive activity"); *see also Feldman v. Reagan*, 843 F.3d 366, 392 (9th Cir. 2016) (en banc) ("ballot collection" isn't "expressive conduct protected under the First Amendment").

The Supreme Court's decision in *Meyer* doesn't require a contrary result. *Meyer* concerned a state's attempt to bar proponents of initiative petitions from paying signature gatherers. 486 U.S. at 421. That prohibition violated the First Amendment because it "limit[ed] the number of voices" that could convey the proponents' "message," which "limit[ed] [the proponents'] ability to make" their petition "the focus of statewide discussion." *Id.* at 422-23. The prohibition, in turn, "reduc[ed] the total quantum of speech on a public issue." *Id.* at 423. Critically, the "petition itself [was] the protected speech," and the "circulation and submission of an initiative petition [was]

closely intertwined with the underlying political ideas put forth by the petition." *Voting for Am., Inc. v. Andrade*, 488 F. App'x 890, 898 n.13 (5th Cir. 2012).

But the petition process is very different that the voter-registration process. The "very nature of a petition process requires association between the third-party circulator and the individuals agreeing to sign." *Id.* In the voter-registration context, the constitutionally protected activities—encouraging voting—doesn't "implicate a third-party's right to process the application." *Id.* That's because "[v]oter registration applications are individual, not associational, and may be successfully submitted without the aid of another." *Id.*

Nor does receiving and moving a completed application from Point A to Point B convert non-expressive conduct into protected speech or conduct. "One does not 'speak'" "by handling another person's 'speech'"—a completed application. *Steen*, 732 F.3d at 390. It also doesn't matter that speech occurred before the prohibited conduct. "While political organizations undoubtedly engage in protected activities," voter-registration "collection does not acquire First Amendment protection merely because it is carried out along with protected activities and speech." *Feldman*, 843 F.3d at 393.

Saying that collection and handling of completed applications communicates an organization's mission strains credulity as well. Imagine if an organization's goal was to *discourage* voting and voter registration. In that scenario, under Plaintiffs' theory, the First Amendment would be "used to protect that group's 'right' to successfully achieve

its expressive goals of preventing others from voting by throwing the registration cards away." *Andrade*, 488 F. App'x at 897 n.12. That can't be.

**c.** The Felon Voter Restriction also runs the *Anderson-Burdick* gauntlet unscathed. *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992). The *Anderson-Burdick* test assesses whether election-related regulations satisfy the requirements of the First and Fourteenth Amendments. If the regulations impose a severe burden on the right to vote, then the regulations must withstand strict scrutiny. *Wa. State Grange v. Wa. State Republican Party*, 552 U.S. 442, 450-51 (2008). If the burden is modest, then a reasonable, nondiscriminatory regulation need only be backed by an important governmental interest. *Id.* Post-hoc rationalizations can be enough. *Mays v. LaRose*, 951 F.3d 775, 789 (6th Cir. 2020). Specific evidence to support governmental interest isn't needed, *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1353 (11th Cir. 2009), because states can act "without waiting for" problems "to occur and be detected within its own borders." *Brnovich v. DNC*, 141 S. Ct. 2321, 2348 (2021).

In this instance, the State has a compelling interest in maintaining orderly election administration and in "avoiding confusion, deception, and even frustration of the democratic process." *Cowen v. Sec'y of Ga.*, 22 F.4th 1227, 1234 (11th Cir. 2022) (citations omitted). And it has a compelling interest in "ensuring that all voter registration[] applications are properly and timely submitted," in "holding third-party voter registration organizations accountable for the applications they collect," and in "preventing instances of fraud." *Browning*, 575 F. Supp. 2d at 1310, 1323 (noting that

the Department "submitted approximately thirteen written complaints received in 2004 by the Division of Elections relating to persons who registered to vote with third-party organizations, following which, these persons unsuccessfully attempted to exercise their right to vote" and that "[a]t the time of voting, the complainants were advised they were not registered to vote because the forms they had filled out had never been turned in").

Keeping convicted felons from handling personal voter information on completed voter registration forms—information such as home addresses, driver's license numbers, and the last four digits of a social security number—furthers these interests. Specific evidence to support these interests isn't necessary.

In sum, the Felon Volunteer Restriction regulates non-expressive conduct. Plaintiffs can freely associate with convicted felons who wish to solicit voter registration. Plaintiffs can still benefit from whatever institutional knowledge their felon volunteers possess. And the State isn't "plac[ing] any restrictions on" the "methods or means third-party voter registration organizations may use to *solicit* new voters and *distribute* registration applications." *Id.* at 1322 (emphasis added). "Instead," the Felon Volunteer Restriction "simply regulates an administrative aspect of the electoral process—the handling of voter registration applications by third-party voter registration organizations *after* they have been collected from applicants." *Id.* (emphasis added). The State has compelling interests in such regulations to safeguard the integrity of the elections and each registration application.

**B.      Plaintiffs are unlikely to succeed on the merits on their Non-U.S. Citizen Volunteer Restriction challenges.**

      **i.      The Non-U.S. Citizen Volunteer Restriction isn't vague.**

Plaintiffs are unlikely to succeed on the merits of their vagueness challenge against the Non-U.S. Citizen Volunteer Restriction. As explained above, the phrase "collecting or handling" is not vague.

      **ii.      The Non-U.S. Citizen Volunteer Restriction isn't overbroad.**

Nor are Plaintiffs likely to succeed on the merits of their overbreadth challenge against the Non-U.S. Citizen Volunteer Restriction. Because the Non-U.S. Citizen Volunteer Restriction regulates the same type of conduct regulated by the Felon Volunteer Restriction, it too implicates no overbreadth concerns. And, as further explained below, even if the provision did encompass some protected speech, the State's interests outweigh any potential First Amendment injury.

      **iii.      The Non-U.S. Citizen Volunteer Restriction satisfies the First Amendment.**

Just like the Felon Volunteer Restriction, the Non-U.S. Citizen Volunteer Restriction regulates non-expressive conduct, not speech.

Regardless, as explained above, the State has strong and compelling interests in safeguarding election integrity, preventing voter fraud, and promoting confidence in the election system as a whole. The Non-U.S. Citizen Volunteer Restriction safeguards election integrity and prevents voter fraud by prohibiting ineligible-to-vote Non-U.S.

Citizens from collecting and handling voter registration applications. It also promotes voter confidence by reasonably ensuring that applicants' voter registration applications are not collected or handled by such persons. Prohibiting Non-U.S. Citizens from collecting or handling voter registration applications is the least restrictive means to achieve those interests. The State legitimately concluded that Non-U.S. Citizens should not be trusted with the responsibility of ensuring that voter registration applications are timely delivered to election officials. Though all legal non-citizens are welcome to Florida, they can't vote, serve on a jury, or hold public office. It makes sense to also exclude them from serving as fiduciaries for citizens seeking to register to vote.

### C. Plaintiffs are unlikely to succeed on the merits on their Voter Information Retention Restriction challenges.

#### i. The Voter Information Retention Restriction isn't vague.

The Voter Information Retention Restriction survives as well. Plaintiffs assert that this provision is vague because it is unclear what the phrase "voter's personal information" means or whether the statute prohibits a 3PVRO from retaining a copy of a receipt provided to an applicant under the Receipt Requirement. *See* § 97.0575(7), Fla. Stat. Not so.

The Voter Information Retention Restriction provides that a person collecting voter registration applications on behalf of a 3PVRO may not collect a voter's application or "retain a voter's personal information, such as the voter's Florida driver license number, Florida identification card number, social security number, or

signature" for any reason other than to provide such application or information to the 3PVRO in compliance with the statute. § 97.0575(7), Fla. Stat. "Personal" information is just that—"private," non-public information. *Merriam-Webster's Collegiate Dictionary* 924 (11th ed. 2005). It is the opposite of "public" information. *See Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/thesaurus/private (principal antonym of "private" is "public").

The context within which the phrase "voter's personal information" reinforces the plain, ordinary meaning. The statute goes on to provide examples of the very types of information that are considered to be a voter's personal information: the voter's Florida driver license number, Florida identification card number, social security number, or signature. None of these examples are generally available to the public; voters (and the State) consider them to be private. That's precisely why such information is exempt from public records requests. *See* § 97.0585, Fla. Stat. (providing that a voter's Florida driver license number, Florida identification card number, social security number, and signature are exempt from public records requests).

Contrary to Plaintiffs' suggestion, the phrase "voter's personal information" does not reasonably prohibit the retention of an applicant's name or telephone number with the applicant's consent. Nor does it encompass the items the statute requires the Division of Elections to include and adopt by rule in the official receipt form implementing the Receipt Requirement. Recall that the Receipt Requirement must contain, at minimum, "the name of the applicant, the date the application is received,

the name of the third-party voter registration organization, the name of the registration agent, the applicant's political party affiliation, and the county in which the applicant resides." § 97.0575(4), Fla. Stat. None of those items fall within the ambit of the statutory phrase "voter's personal information." *See* § 97.0575(7), Fla. Stat. People do not generally consider such information to be "private." The Division of Election's pending rule will confirm that understanding.

### ii.   The Voter Information Retention Restriction isn't overbroad.

Plaintiffs are unlikely to succeed on the merits of their overbreadth challenge against the Voter Information Retention Restriction. As explained below, the State's interests in the Voter Information Retention Restriction outweigh any potential First Amendment injury.

### iii.   The Voter Information Retention Restriction satisfies the First Amendment

The Voter Information Retention Restriction prevents 3PVROs from "retaining a voter's personal information." § 97.0575(7), Fla. Stat. "Personal information" includes a voter's "Florida driver license number, Florida identification card number, social security number, or signature." *Id.* Plaintiffs complain that the provision prevents them from retaining voters' email addresses, telephone numbers, or mailing or residential addresses, which, according to Plaintiffs, prevents them from contacting voters about potential application errors, potential recruitment, or participating in organizational events.

32

But under the Secretary's interpretation, the Voter Information Retention Restriction doesn't prevent Plaintiffs from retaining (and using) voters' email addresses, telephone numbers, or mail or residential addresses. As the ongoing rulemaking will make clear, however, the provision does prevent the retention of voters' personal, sensitive information such as "social security number[s]" and "identification card number[s]." In sum, Plaintiffs have no First Amendment interests in the personal, sensitive information and the statute doesn't keep them from retaining the public information. So there can be no First Amendment violation.

### D. Plaintiffs are unlikely to succeed on the merits on their Receipt Requirement challenges.

#### i. The Receipt Requirement isn't vague.

The Receipt Requirement isn't vague either. In fact, Plaintiffs can't point to any language in this particular provision that render it vague. *See* § 97.0575(4), Fla. Stat. Their argument seems to be that the Receipt Requirement is vague because the Voter Information Retention Restriction is vague.

Regardless, the Receipt Requirement clearly states that a 3PVRO collecting voter registration applications "shall provide a receipt to an applicant upon accepting possession of his or her application" and that the Division of Elections "shall adopt by rule a uniform format for the receipt by October 1, 2023" that includes at a minimum "the name of the applicant, the date the application is received, the name of the third-party voter registration organization, the name of the registration agent, the applicant's

political party affiliation, and the county in which the applicant resides." *Id.* This language is not vague. To the contrary, no later than October 1, 2023, Plaintiffs will know precisely what the Receipt Requirement requires because they will have access to the official receipt form promulgated by the Division pursuant to the statute.

### ii.     The Receipt Requirement isn't overbroad.

Plaintiffs are unlikely to succeed on the merits of their overbreadth challenge against the Receipt Requirement. As explained below, the State's interests in the Receipt Requirement outweigh any potential First Amendment injury.

### iii.     The Receipt Requirement satisfies the First Amendment.

The Receipt Requirement states that 3PVROs must provide voters with a receipt "upon accepting possession" of their completed voter-registration application. The receipt must include, at the very least, "the name of the applicant, the date the application is received, the name of the third-party voter registration organization, the name of the registration agent, the applicant's political party affiliation, and the county in which the applicant resides." § 97.0575(4), Fla. Stat. Plaintiffs complain that providing a receipt to a voter with the volunteer's name would disincentivize volunteers from engaging in 3PRVO activities.

Plaintiffs' concerns fall short. Ironically, in challenging the Voter Information Retention Restriction, Plaintiffs say that the First Amendment *requires the disclosure* of voter information. Plaintiffs say they need this information "to notify" the voter "of an

error on a completed registration form." Yet in challenging the Receipt Requirement, Plaintiffs argue that the First Amendment *shields the disclosure* of volunteer information. Plaintiffs say that the voter can't contact the volunteer to "notify" the volunteer of an error or issue with the completed registration form.

Though Plaintiffs seem interested in making the First Amendment a one-way ratchet, used to mine voter information but skirt responsibility, the State has important interests in ensuring that 3PVROs are held accountable for the delivery of completed voter-registration applications. *Browning*, 575 F. Supp. 2d at 1323. A voter who entrusts a volunteer with his completed application, should at the very least know who he's entrusting the application—the name of the fiduciary. As the State has demonstrated, 3PVROs are accident prone, and a voter should know who to notify if his application isn't timely submitted. In this context, a "limited identification requirement" is appropriate. *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 353 (1995).

Plaintiffs' reliance on *Buckley v. American Constitutional Law Foundation* to argue the contrary is inapt. 525 U.S. 182, 186 (1999). In that case, a state required citizen-initiative signature collectors to wear badges with their names. *Id.* at 197-200. The Supreme Court invalidated the requirement. As in *Meyer*, the Court held that the circulation of citizen-initiatives was political speech. *Id.* The Court reasoned that disclosing a signature collector's name, at the time when the signature collector is engaging in (potentially "volatile") political speech, would lead to harassment and dissuade signature collectors from working. *Id.*

The Supreme Court juxtaposed that *impermissible* disclosure requirement with a *permissible* requirement that signature collectors provide their names, addresses, and signatures on affidavits. *Id.* at 198-99. The affidavit requirement was permissible because "the affidavit is separated from the moment the circulator speaks" and doesn't "expose the circulator to the risk of heat of the comment harassment." *Id.* (cleaned up).

The Receipt Requirement falls within what *Buckley* itself said would be permissible. Florida's provision requires volunteers to disclose their names *after* engaging in speech—after encouraging an eligible voter to complete an application and *after* collecting that application (though the collection and handling of the completed application is not itself speech or expressive conduct). Like the *Buckley* affidavit, and unlike the *Buckley* badge requirement, there's a separation from the moment the volunteers speak and when the volunteers provide their names. Harassment is unlikely; voters are unlikely to hand completed applications to someone they don't like.

### E.     Plaintiffs haven't shown irreparable harm.

Irreparable harm must be "serious and *immediate.*" *Siegel*, 234 F.3d at 1177 (emphasis in the original). Absent an injunction, harm must be "imminent." *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). After all, "the very idea of a *preliminary* injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1248 (11th Cir. 2016) (emphasis in the original).

There's no immediate or imminent harm to Plaintiffs in this case. That's because (1) the 2023 Law, by its very terms, delays enforcement of its 3PVRO provisions against Plaintiffs until September 30, 2023, and (2) the Department of State is engaging in rulemaking that is likely to moot many of Plaintiffs' arguments. These two factors militate against granting their preliminary-injunction motion and militate in favor of (at the very least) deferring judgment until the rulemaking is completed.

### F.   Plaintiffs fail to establish the remaining factors.

The remaining preliminary-injunction factors weigh against granting a preliminary injunction. The public benefits from the State ensuring proper election administration. *Cowen*, 22 F.4th at 1234; *Browning*, 575 F. Supp. 2d at 1323.

The public is also served when the State enforces its laws. The State is harmed when it's prevented from doing so. *Hand v. Scott*, 888 F.3d 1206, 1214 (11th Cir. 2018) (the State is "harmed" when it can't "apply its own laws"); *see also Maryland v. King*, 567 U.S. 1301, 1301 (2012) (Roberts, C.J., in chambers) ("Any time a State is enjoined by a court from effectuating" its laws, "it suffers a form of irreparable injury." (cleaned up)).

Because Plaintiffs haven't established a constitutional (or statutory) violation, haven't shown irreparable harm, and haven't shown that the extraordinary relief they request in the public interest, these factors tilt decidedly in the State's favor.

### CONCLUSION

This Court should deny the motion for preliminary injunction. The kind of "extraordinary" and "drastic" relief that Plaintiffs seek is simply not warranted here.

*McDonald's Corp.*, 147 F.3d at 1306. The State of Florida has made a measured decision to regulate its elections—a decision entrusted to it by the federal and state constitutions. Neither the law nor the facts provide a basis to preliminarily enjoin the Felon Volunteer Restriction, the Non-U.S. Citizen Volunteer Restriction, the Receipt Requirement, or the Voter Information Retention Restriction.

Dated: June 23, 2023                    Respectfully submitted,

Bradley R. McVay (FBN 79034)           /s/ Mohammad O. Jazil
brad.mcvay@dos.myflorida.com           Mohammad O. Jazil (FBN 72556)
Joseph Van de Bogart (FBN 84764)       mjazil@holtzmanvogel.com
joseph.vandebogart@dos.myflorida.com   Joshua E. Pratt (FBN 119347)
Ashley Davis (FBN 48032)               jpratt@holtzmanvogel.com
ashley.davis@dos.myflorida.com         Michael Beato (FBN 1017715)
FLORIDA DEPARTMENT OF STATE            mbeato@holtzmanvogel.com
R.A. Gray Building                     zbennington@holtzmanvogel.com
500 S. Bronough St.                    HOLTZMAN VOGEL BARAN
Tallahassee, FL 32399                  TORCHINSKY & JOSEFIAK
(850) 245-6536                         119 S. Monroe St. Suite 500
                                       Tallahassee, FL 32301
                                       (850) 270-5938


## LOCAL RULE 7.1(F) CERTIFICATION

Pursuant to Local Rule 7.1(F), this motion and memorandum of law contains 9,180 words excluding the case style, signature block, and any certificate of service.


## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2023, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

/s/ Mohammad O. Jazil
Mohammad O. Jazil