## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

LEAGUE OF WOMEN VOTERS OF
FLORIDA, INC., et al.,

     *Plaintiffs,*

     v.                     Case No. 4:23-cv-216-MW/MAF

CORD BYRD, in his official capacity as
Florida Secretary of State, et al.,

     *Defendants.*

_____/

## THE SECRETARY OF STATE'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM AS TO THE LEAGUE PLAINTIFFS' FELON-RESTRICTION CHALLENGE

Secretary of State Cord Byrd moves this Court to enter summary judgment as to the League Plaintiffs' free-speech claim (Count I), free-association claim (Count II), overbreadth claim (Count III), and vagueness claim (Count IV) against SB7050's Felon Restriction. Doc.1. Material facts aren't in dispute, making summary judgment appropriate.

# I.  Introduction

SB7050's Felon Restriction prevents felons convicted of violating the Election Code, exploiting the elderly and disabled, sexual offenses and murder, fraud, forgery, counterfeiting, and perjury from collecting or handling completed voter-registration forms for third-party voter registration organizations ("3PVROs").[1] Felons who have flouted the Election Code, who have taken advantage of vulnerable populations, who have committed extremely violent offenses (and who may not have their voting rights restored), and who have veracity issues shouldn't be able to collect or handle forms with voters' drivers license numbers, identification card numbers, and signatures. This is for good reason: 3PVROs have behaved badly in Florida. Felon 3PVRO canvassers, in particular, have committed fraud and other crimes when registering Floridians to vote, to the detriment of those voters, and to the annoyance of Florida law enforcement.

Plaintiffs take issue with the Felon Restriction. Their arguments, however, are unconvincing. They contend that the restriction hampers the organizations' and volunteers' free speech. But the restriction doesn't prohibit conversations with voters; it only prevents certain felons from physically exercising custody over completed voter-registration forms and moving such forms from Point A to Point B. That's non-expressive conduct, not speech. Plaintiffs contend that the restriction hampers free

---

[1] The restriction applies to felons who collect or handle completed forms *or* partially filled out forms—i.e., forms with voter information on them. When the Secretary refers to "completed forms" in this motion, he means partially filled out forms as well.

2

association. But the restriction still allows Plaintiffs to freely associate with felons who violate the Election Code, those who exploit the elderly and disabled, and those who commit sexual offenses, murder, fraud, forgery, counterfeiting, and perjury. The one thing they can't do is allow such felons to take physical custody of completed voter-registration forms containing voters' personal information. Plaintiffs also contend that the restriction is overbroad and vague. But the restriction contains clear language and enumerates specific felonies. The Department of State has also promulgated rules to reiterate the restriction's plain aims. The restriction is clear and is made clearer still.

In short, Plaintiffs' arguments fail. In any event, it's also unlikely that Plaintiffs have standing to challenge the Felon Restriction: they can't confirm with any certainty whether an excluded felon has ever helped them with registration activities, and Plaintiffs don't conduct background checks on members and volunteers. So they have no way of knowing whether excluded felons have helped or will help them with registration activities. Moreover, Plaintiffs' reaction to the Felon Restriction—to prohibit *all* members and volunteers from conducting "paper" registration activities—is a self-imposed harm.

For these reasons, this Court should enter summary judgment in favor of the Secretary on Plaintiffs' challenge to the Felon Restriction. There's no dispute as to the material facts, and the Secretary is entitled to judgment as a matter of law.

## II.  Undisputed Material Facts

The Secretary begins by discussing Florida's issues with 3PVROs. Then he discusses SB7050's Felon Restriction and the Department of State's rulemaking pertaining to it. The Secretary concludes by discussing Plaintiffs' registration activities and their challenge to the Felon Restriction.

## A.    Florida's Trouble with 3PVROs.

It is undisputed that 3PVROs have behaved badly in Florida. In 2022 alone, Florida's Office of Election Crimes and Security "reviewed approximately 3,077 voter registration applications that were collected and submitted untimely by 3PVROs." Doc.86-1 at 5.[2] Not only that, the office:

> [M]ade a number of criminal referrals related to 3PVROs; specifically, the referrals targeted voter registration agents employed by 3PVROs, who are alleged to have committed fraud, engaged in identity theft, changed a voter's party affiliation, registered deceased individuals, or registered fake individuals, among other violations. Many of these criminal referrals are still pending and remain under active criminal investigation with law enforcement.

Doc.86-1 at 5. Take one badly behaving 3PVRO: Hard Knocks. It received four fine letters in less than one year for causing harm to over 2,500 voter registrants. Docs.86-2, 86-3, 86-4, 86-5. In two of the letters, Hard Knocks's fine could have been as high as $191,500, but due to statutory caps, the fine was limited to $33,400. Doc.86-5 at 1.

---

[2] Doc.86 contains the exhibits to this motion; page citations are to the blue page number in the upper-right corner.

4

Hard Knocks also used felons to assist with its registration activities. It "conduct[ed] no or limited background checks on their canvassers who" were "asked to handle sensitive" voter "information." Doc.86-6 at 15. One Hard Knocks employee—a supervisor—said that "he was instructed to hire just about anyone who walked into the office seeking a job." Doc.86-6 at 14.

Hard Knocks thus had a canvasser, Eugene Florence, who was a "fifteen-time convicted felon." Doc.86-6 at 15. A criminal investigation concluded that he "willfully submitted at least six false voter registration applications" while working for Hard Knocks. Doc.86-6 at 16. Another Hard Knocks canvasser was Roderica Cody. She "had been convicted of Battery two or more times along with petit theft." Doc.86-6 at 15. The same criminal investigation found that she "willfully submitted at least three false voter registration applications." Doc.86-6 at 16.

The investigation concluded that "six canvassers," and "specifically Roderica Cody, employed by Hard Knocks Strategies LLC, a 3PVRO[,] submitted twenty-nine fraudulent voter applications to the Lee County Office of the Supervisor of Elections." Doc.86-6 at 10, 16.

Against this backdrop, Florida sought to tighten its 3PVRO laws. The Office of Election Crimes and Security provided the Florida Legislature with 3PVRO issues in its 2023 report. *E.g.*, Doc.38-1 at 82-93, ¶ 7.

**B.      Florida Passes SB7050.**

In 2023, the Florida Legislature passed, and the Governor signed into law, SB7050. Among its many aims, the law tightens up 3PVRO regulations. In particular, it prevents individuals with certain felonies from collecting or handling completed voter-registration forms for 3PVROs:

> (1) Before engaging in any voter registration activities, a third-party voter registration organization must register and provide to the division, in an electronic format, the following information:
>
> . . .
>
> (e) An affirmation that each person collecting or handling voter registration applications on behalf of the third-party voter registration organization has not been convicted of a felony violation of the Election Code, a felony violation of an offense specified in s. 825.103 [exploitation of an elderly or disabled adult], a felony offense specified in s. 98.0751(2)(b) or (c) [felony sexual offense or murder], or a felony offense specified in chapter 817 [fraud], chapter 831 [forgery or counterfeiting], or chapter 837 [perjury].
>
> A third-party voter registration organization is liable for a fine in the amount of $50,000 for each such person who has been convicted of a felony violation of the Election Code, a felony violation of an offense specified in s. 825.103, a felony offense specified in s. 98.0751(2)(b) or (c), or a felony offense specified in chapter 817, chapter 831, or chapter 837 who is collecting or handling voter registration applications on behalf of the third-party voter registration organization.

Ch. 2023-120, § 4, Laws of Fla. (2023) (space added for readability). This language is now codified in Florida Statute § 97.0575. The Secretary has offered a number of governmental interests in support of the Felon Restriction. Doc.86-7 at 1-3.

**C.      The Department of State Passes Rules.**

The Department of State reiterated SB7050's clear aims through rulemaking. Two provisions are relevant here. The first states that if a person collecting or handling applications on behalf of a 3PVRO signs a form, attesting that he or she isn't an excluded felon, the 3PVRO won't be fined if, in fact, the person is an excluded felon:

> A 3PVRO may, pursuant to section 97.0575(1)(e)-(f), F.S., require each person collecting or handling voter registration applications on behalf of the 3PVRO to sign written declarations using Form DS-DE 127 declaring under penalty of perjury that he or she has not been convicted of a felony enumerated in section 97.0575(1)(e), F.S. . . . A 3PVRO shall not be subject to a fine pursuant to section 97.0575(1)(e)-(f), F.S., as applicable, for permitting a felon . . . to handle or collect voter registration applications on behalf of the 3PVRO if the 3PVRO has a Form DS-DE 127 signed by the felon . . . prior to collecting or handling voter registration applications on behalf of the 3PVRO.

Doc.86-8 at 3; Fla. Admin. Code. R. 1S-2.042(6)(e).

The second underscores the commonsense understanding of "collecting" and "handling" voter-registration forms:

> "Collecting or handling," for purposes of section 97.0575(1)(e)-(f), F.S., means physically exercising custody over voter registration applications containing a voter's personal information. It does not include distributing blank voter registration applications, supervising the collecting or handling of voter registration applications, assisting a voter who requests assistance to fill out their voter registration application, or facilitating the voter to register electronically through registertovoteflorida.gov.

Doc.86-8 at 1; Fla. Admin. Code. R. 1S-2.042(3)(c).

**D.      Plaintiffs' Registration Activities and Challenge Against SB7050.**

Plaintiffs conduct registration activities. Yet they don't conduct criminal background checks on "prospective employees, volunteers, and other agents who collect or handle voting registration applications on" their "behalf." Doc.86-9 at 24. Plaintiffs also aren't completely sure (and have no way of knowing due to the lack of criminal background checks) whether felons convicted of violating the Election Code, exploiting the elderly and disabled, sexual offenses and murder, fraud, forgery, counterfeiting, and perjury have collected or handled voter-registration forms for Plaintiffs during the 2018, 2020, and 2022 election cycles. Doc.86-9 at 24-25.

In response to SB7050's Felon Restriction, Plaintiffs are preventing *everyone*— felons or otherwise—from conducting "paper" registration activities. Doc.86-9 at 25-26. This doesn't include encouraging eligible voters to register, but it includes taking completed paper voter-registration forms and delivering them to the proper governmental office. Plaintiffs, moreover, responded by initiating this lawsuit against the State. As to the Felon Restriction, they allege that it violates their free-speech rights (Count I), violates their free-association rights (Count II), is overbroad (Count III), and is vague (Count IV). Doc.1. (Plaintiffs challenge other SB7050 provisions as well.)

Of the three plaintiff groups in the three SB7050-consolidated cases, the League Plaintiffs here are the only ones challenging the Felon Restriction. The Hispanic Federation Plaintiffs never challenged it, *see* 4:23-cv-218, Doc.1 & 79, and the NAACP

Plaintiffs initially did, *see* 4:23-cv-215, Doc.1, but then dropped it, *see* 4:23-cv-215, Doc.184.

### III. Legal Standard

Summary judgment is appropriate when, as here, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While inferences are viewed in favor of the non-moving party, the non-moving party can't rely on conclusory or unsubstantiated statements and discovery responses. *See, e.g.*, *TocMail, Inc. v. Microsoft Corp.*, 67 F.4th 1255, 1264-65 (11th Cir. 2023); *McKenny v. United States*, 973 F.3d 1291, 1303 (11th Cir. 2020).

### IV. Argument

There's no dispute over material facts. Plaintiffs' free-speech claim fails because the Felon Restriction prevents non-expressive conduct; it doesn't touch speech. Plaintiffs' free-association claim fails because the restriction still allows Plaintiffs to associate with anyone, including any felon. Plaintiffs' overbreadth and vagueness claims fail because the Felon Restriction's language is specific and clear, and the Department of State's rules underscore that specific and clear language. In any event, as a threshold matter, Plaintiffs will be unable to satisfy *their* burden of establishing Article III standing and explain why their *facial* challenge—the hardest constitutional challenge—should be allowed to move forward.

**A.      Plaintiffs' Claims Are Not Justiciable.**

**1.      Plaintiffs Lack Standing to Challenge the Felon Restriction.**

To be sure, it is Plaintiffs' burden to prove standing "at each stage of the case." *League of Women Voters of Fla. v. Lee*, 2021 U.S. Dist. LEXIS 254570, at *17 n.5 (N.D. Fla. Dec. 17, 2021). But Plaintiffs don't have standing to challenge the Felon Restriction for three reasons.

*First*, Plaintiffs incurred self-imposed harms. Their reaction to SB7050's Felon Restriction was to prevent *all* members and volunteers from conducting "paper" registration activities. Doc.86-9 at 25-26. They didn't need to do that. The restriction affects only a subset of felons, and the restriction doesn't touch non-felons. Plaintiffs' reaction is, in effect, excessive. Self-imposed harms aren't injuries in fact. *City of S. Miami v. Governor of Fla.*, 65 F.4th 631, 640 (11th Cir. 2023).

Plaintiffs may argue that their reaction is due to the overall effect of SB7050—its citizen-volunteer restriction, its information-retention requirements, and so on. But Plaintiffs must link their injury to a specific challenged statutory provision, here, the Felon Restriction. *Camp Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006). They can't.

*Second*, Plaintiffs haven't established associational standing. To date, they haven't demonstrated that "any member" or volunteer "is substantially likely to be injured because of the" Felon Restriction. Doc.46 at 16. They haven't shown that excluded felons have ever helped them with registration activities or will ever help them with

registration activities. They haven't identified a single member or volunteer who would assist Plaintiffs' registration activities but for the restriction. And they don't conduct background checks and don't inquire into the criminal history of those who collect or handle sensitive voter information. Doc.86-9 at 24-25. It's therefore entirely speculative whether the Felon Restriction actually harms Plaintiffs.

*Third*, Plaintiffs haven't established organizational standing. To date, they haven't shown that they are injured specifically by the Felon Restriction under a diversion-of-resources theory. "[G]eneralizations" about diversion-of-resources are insufficient, but that is all the evidence Plaintiffs have presented. Doc.46 at 13. They haven't explained in sufficient detail "what resources they are diverting, where those resources would have gone before they were diverted, and why they are being diverted to combat the" Felon Restriction "in particular—not 'the Law' as a whole." Doc.46 at 17.

As this Court explained at the preliminary-injunction stage, the evidence presented by Plaintiffs at that stage of the case failed to establish associational or organizational standing. *See* Doc.46. Plaintiffs have yet to remedy that defect, and it is their burden to present sufficient evidence of standing at the summary-judgment stage if they wish to continue their challenge to the Felon Restriction. *See League of Women Voters of Fla.*, 2021 U.S. Dist. LEXIS 254570, at *14.

As such, Plaintiffs lack standing to challenge the Felon Restriction. Given the material (or lack thereof) provided during the discovery phase, Plaintiffs remain unable to establish standing. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information

11

or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial.").

### 2. Plaintiffs Mount a Facial Challenge to the Felon Restriction.

Before turning to the merits, and assuming that Plaintiffs have standing, the Secretary notes that Plaintiffs mount a facial challenge to the Felon Restriction. They can't mount an as-applied challenge because, as discussed above, they haven't identified a single member or volunteer who is affected by this restriction. Plaintiffs thus face tough sledding: facial challenges are the most difficult constitutional challenges to mount, and they must prove that *no set of circumstances exist* under which the restriction would be constitutional. *See United States v. Salerno*, 481 U.S. 739, 745 (1987). That standard hasn't been met here.

### B. Plaintiffs' Constitutional Claims Fail.

The free-speech, free-association, overbreadth, and vagueness claims must fail as a matter of law. Each is discussed in turn.

### 1. Plaintiffs' Free-Speech Claim Fails.

The First Amendment protects the freedom of speech. At its core is the freedom to engage in "political discourse," a "direct one-on-one communication" about politics. *Meyer v. Grant*, 486 U.S. 414, 424 (1988). But not everything is speech. Conduct is different from speech, and only *expressive* conduct—conduct where there's a "great" "likelihood" that those "who view[]" the conduct would understand that a message is being conveyed—is protected by the First Amendment. *Texas v. Johnson*, 491 U.S. 397,

404 (1989). "Conduct does not become speech for First Amendment purposes merely because the person engaging in the conduct intends to express an idea." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 388 (5th Cir. 2013) (quoting *Rumsfeld v. FAIR*, 547 U.S. 47, 66 (2006)). Nor does non-expressive conduct become speech when combined with an activity that involves speech. *Id.* at 390-92.

    **a.** Here, Plaintiffs contend that the Felon Restriction violates their First Amendment rights. They argue that it curtails their "core political speech": their "interactive communications and activities aimed at encouraging eligible Floridians to register to vote and participate in the democratic process." Doc.1 ¶ 83. This includes, in part, "persuad[ing] Floridians to participate in democracy," and "convincing them that voter registration is a safe and worthwhile endeavor." Doc.1 ¶ 84. Plaintiffs cite *Meyer v. Grant*, 486 U.S. at 414, and *Buckley v. American Constitutional Law Foundation*, 525 U.S. 182 (1999), for these propositions. Doc.1 ¶ 82.

    These arguments are unavailing. The Felon Restriction doesn't impinge on any core political speech. Indeed, it restricts no speech at all. Plaintiffs may engage in political speech when any of their members or volunteers—excluded felons or otherwise—approach voters, discuss politics with them, encourage them to register to vote, and answer questions about the voter-registration process. But no speech is affected by the Felon Restriction. Any member or volunteer—excluded felon or otherwise—can still do any of those things.

What an excluded felon can't do is the conduct that (may) come after: taking a completed voter-registration form and transporting it to the relevant governmental actor.[3] No speech is taking place during this conduct. It's simply conduct, and non-expressive conduct at that. It's conduct that can only be described as a ministerial action: transporting a form from Point A to Point B, as required by State law, and under threat of penalty if done incorrectly. *See, e.g.*, Fla. Stat. § 97.0575. It's an "administrative" function "of the electoral process—the handling of voter registration applications by third-party voter registration organizations *after* they have been collected from applicants." *League of Women Voters of Fla. v. Browning*, 575 F. Supp. 2d 1298, 1322 (S.D. Fla. 2008) (emphasis in the original). It's a means of "facilitating" the voter-registration process. *Feldman v. Reagan*, 843 F.3d 366, 392-93 (9th Cir. 2016) (discussing a ballot-collection statute).

The action at issue is not speech. It is not inherently expressive conduct. No one would view this conduct as conveying any message. *Johnson*, 491 U.S. at 404. No one would view a postal worker as "speaking" when she delivers a completed voter-registration form to a supervisor of elections; the postal worker is just complying with the requirements of her job and doesn't "speak" by engaging in this conduct. Nor would anyone view a garbage man as "speaking" on environmental issues when he picks up trash, or view a delivery man as "speaking" in support of FedEx's working conditions,

---

[3] The Secretary discusses the definitions of "collecting" and "handling" when addressing Plaintiffs' vagueness challenge further below.

or "speaking" in support of the latest BarkBox assortment, when he delivers a package. Sometimes, non-expressive conduct is just non-expressive conduct, and not speech. Again, with 3PVROs, the pertinent protected speech occurs *before* collecting or handling completed voter-registration forms. *FAIR*, 547 U.S. at 66. The later non-expressive conduct (collecting or handling) is divorced from the earlier speech (encouraging registration).

Even so, Plaintiffs rely on *Meyer* and *Buckley*, two citizen-initiative petition cases. Those cases are distinguishable, for two reasons. *First*, a citizen-initiative petition isn't like a voter-registration form. The citizen-initiative petition is itself speech. *Voting for Am., Inc. v. Andrade*, 488 F. App'x 890, 898 n.13 (5th Cir. 2012). A pregnant-pig-protection petition expresses political support for protecting pregnant pigs. That's different from a completed voter-registration form. A completed form doesn't convey a message like a citizen-initiative petition; it's just an administrative means to register to vote. To the extent that it *could* be viewed as speech, it's the voter's speech—not the 3PVRO's speech. And a 3PVRO doesn't "speak" by moving someone else's "speech" from Point A to Point B. *Steen*, 732 F.3d at 390.

And *second*, the State laws in *Meyer* and *Buckley* were different in kind from the Felon Restriction. The *Meyer* and *Buckley* restrictions were speech restrictions, restrictions on citizen-initiative-petition advocacy (in *Meyer*, paid circulators couldn't collect signatures and circulate petitions, 486 U.S. at 417), and restrictions on how the advocacy was to take place (in *Buckley*, in part, circulators had to wear name badges, 525

U.S. at 197-200). That's different from the Felon Restriction. The restriction doesn't touch advocacy at all, only collecting or handling completed forms, which, again, is just non-expressive conduct. The restriction therefore doesn't reduce the "quantum" of advocacy. *Meyer*, 486 U.S. at 423. The quantum remains the same: excluded felons can still advocate, they just can't move completed forms.

**b.** Plaintiffs also argue that the Felon Restriction is a content-based and a viewpoint-based restriction on speech. They state that the Felon Restriction "define[s] the coverage of" its "restriction[] and prohibition[] based on the subject of" Plaintiffs' "speech," which "aims to *promote* voter registration. Similar speech by the League" Plaintiffs "or other similar organizations *discouraging* voter registration would be entirely unaffected by SB 7050's provisions." Doc.1 ¶ 87 (emphases in the original). Not so.

Put aside the fact that collecting or handling completed voter-registration forms isn't speech or expressive conduct. The Felon Restriction could just as well apply to groups that wish to *discourage* voter participation. A nefarious 3PVRO could have the stated mission of discouraging voter participation. It could use excluded felons to register individuals to vote, with the aim of throwing away completed voter-registration forms, thus fulfilling its mission. The Felon Restriction would still apply to that nefarious 3PVRO. Excluded felons, after all, would be collecting and handling completed voter-registration forms, from Point A to Point Trash Can. *See Steen*, 732 F.3d at 391-92 (discussing this hypothetical); *Andrade*, 488 F. App'x at 898 n.14 (same). So Plaintiffs' arguments aren't right; the restriction applies to every 3PVRO, regardless

of organizational mission. It doesn't touch any speech subject (like a content-based restriction) or viewpoint (like a viewpoint-based restriction).

Plaintiffs' argument also underscores that moving completed forms from Point A to Point B isn't speech, even if there's some organizational aim associated with it. If Plaintiffs' argument holds true—moving a completed form is speech because it's tied with an organizational mission—then that nefarious 3PVRO's actions—throwing out completed forms to further its voting-discouragement mission—is also protected speech. *Steen*, 732 F.3d at 391-92 (discussing this hypothetical); *Andrade*, 488 F. App'x at 898 n.14 (same). But that can't be right. The First Amendment shouldn't and doesn't tolerate this result.

**c.** The Felon Restriction withstands any level of constitutional scrutiny—strict scrutiny, *Anderson-Burdick* balancing,[4] or rational basis. With strict scrutiny, an election regulation must be narrowly tailored to meet a compelling governmental interest. *Burson v. Freeman*, 504 U.S. 191, 198 (1992). With *Anderson-Burdick* balancing, if an election regulation is reasonable and nondiscriminatory, and if the regulation imposes a modest burden on the right to associate, it need be only backed by an important governmental interest. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451-52 (2008). And under rational-basis review, an election regulation need only be backed by a

---

[4] 3PVRO plaintiffs don't have any right to vote and shouldn't be allowed to pursue any right-to-vote related claims. This motion, and only this motion, assumes that the *Anderson-Burdick* test applies. And if it does, the test is met.

reasonable governmental justification, even one backed by rational speculation. *FCC v. Beach Comm'ns*, 508 U.S. 307, 315 (1993).

Conceptually, if strict scrutiny is met, then all the other tests should be satisfied. For strict scrutiny, the State has "compelling interests" in "maintaining fairness, honesty, and order" in its elections, and "avoiding confusion, deception, and even frustration of the democratic process." *Green v. Mortham*, 155 F.3d 1332, 1335 (11th Cir. 1998) (citing and quoting cases). A State also has "a compelling interest in preserving the integrity of its election process," including preventing "[v]oter fraud" and ensuring public "[c]onfidence." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (citing and quoting cases).

As explained above, there is a history of 3PVROs behaving badly in Florida. In 2022 alone, thousands of eligible Florida voters had their voter-registration applications untimely submitted by 3PVROs. Doc.86-1 at 5. And Florida voters were the victims of criminal activity caused by 3PVRO felon canvassers. Doc.86-6. Those who entrusted Hard Knocks—and their felon canvassers with completed forms—serve as prime examples for why the State enacted the Felon Restriction. Docs.86-2, 86-3, 86-4, 86-5.

Badly behaved 3PVROs have already denied Floridians their right to vote. The harm to be remedied is real and the means being used to remedy it is narrowly tailored. The Felon Restriction affects *not all* felons, but a subset of felons who violated the Election Code, who have taken advantage of vulnerable populations, who have committed extremely violent offenses (and who may not have their voting rights restored), and who have veracity issues. And again, the restriction doesn't prevent

advocacy or core political speech. It only affects moving completed forms from Point A to Point B. *See also* Doc.86-7 at 1-3 (providing interests for the Felon Restriction).

As will be explained below, the Felon Restriction doesn't hamper Plaintiffs' associational rights in the slightest. Therefore, under any level of review—strict scrutiny, *Anderson-Burdick*, rational basis—the restriction survives scrutiny. Plaintiffs' free-speech claim fails.

## 2.    Plaintiffs' Free-Association Claim Fails.

The First Amendment protects the freedom to associate. *NAACP v. Alabama*, 357 U.S. 449, 461 (1958). But the "right to associate for expressive purposes is not" "absolute." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984). In the elections context, if a "reasonable, nondiscriminatory" election regulation "imposes only modest burdens" on the right to associate, the regulation need only be justified by "important" governmental interests. *Wash. State Grange*, 552 U.S. at 451-52.

Here, Plaintiffs contend that the Felon Restriction violates their right to free association. They argue that the restriction "prevent[s]" them "from freely banding together with others through one of" their "central associational activities: voter registration drives," thus "hamstring[ing]" their "attempts to associate with Florida citizens by encouraging them to register to vote and participate in the political process." Doc.1 ¶ 98. Plaintiffs also suggest that they will be forced to "probe" "members'" and supporters'" "criminal history and exclude individuals from" their "associational

activities based on such information," and that Plaintiffs may face penalties for "inadvertent errors and omissions." Doc.1 ¶¶ 100-01.

Plaintiffs' arguments miss the mark. The Felon Restriction doesn't prevent Plaintiffs from associating with anyone. Those who violate the Election Code, those who exploit the elderly and disabled, and those who commit sexual offenses, murder, fraud, forgery, counterfeiting, and perjury can still become members of or 3PVRO volunteers for Plaintiffs. They can advocate on Plaintiffs' behalf. They can approach voters, discuss politics with them, encourage them to register to vote, and answer questions about the voter-registration process. Plaintiffs can even have felons convicted of violating the Election Code talk to voters about participating in democracy, encourage eligible voters to register to vote, explain how to comply with election regulations, and hand out blank registration forms to voters. The Felon Restriction prevents none of that.

Those individuals, however, just can't collect or handle a completed voter-registration form under the Felon Restriction. That's it. The prohibition is remarkably modest, and it pales in comparison to other felon-related restrictions under Florida law. *See, e.g.*, Fla. Stat. § 1012.315 (certain felons can't be teachers); Fla. Stat. § 943.13 (certain felons can't be prison guards); Fla. Bar Admissions R. 2-13.3 (convicted felons can't apply to be lawyers unless their civil rights have been restored). Again, excluded felons can still participate in registration activities under the Felon Restriction—they just can't

collect or handle completed voter-registration forms. Plaintiffs' associational concerns are therefore nonexistent.

So are their worries about incurring penalties and probing their membership's and volunteers' criminal histories. Rule 1S-2.042(6)(e) states that if a person collecting or handling applications on behalf of a 3PVRO signs a form, attesting that he or she isn't an excluded felon, the 3PVRO won't be fined if, in fact, the person is an excluded felon:

> A 3PVRO may, pursuant to section 97.0575(1)(e)-(f), F.S., require each person collecting or handling voter registration applications on behalf of the 3PVRO to sign written declarations using Form DS-DE 127 declaring under penalty of perjury that he or she has not been convicted of a felony enumerated in section 97.0575(1)(e), F.S. . . . A 3PVRO shall not be subject to a fine pursuant to section 97.0575(1)(e)-(f), F.S., as applicable, for permitting a felon . . . to handle or collect voter registration applications on behalf of the 3PVRO if the 3PVRO has a Form DS-DE 127 signed by the felon . . . prior to collecting or handling voter registration applications on behalf of the 3PVRO.

Doc.86-8 at 3; Fla. Admin. Code. R. 1S-2.042(6)(e). Plaintiffs' arguments don't carry any water. The Felon Restriction doesn't affect Plaintiffs' associational rights at all. And even if they did, the effect is minimal, and the restriction survives constitutional review for the reasons expressed above.

### 3.    Plaintiffs' Overbreadth Claim Fails.

The overbreadth doctrine is "strong medicine," and it's not to be "casually employed." *United States v. Williams*, 553 U.S. 285, 293 (2008). "To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and

their number must be substantially disproportionate to the statute's lawful sweep." *United States v. Hansen*, 143 S. Ct. 1932, 1939 (2023). "[P]erfection is not required." *Cheshire Bridge Holdings, LLC v. City of Atlanta*, 15 F.4th 1362, 1378 (11th Cir. 2021).

Plaintiffs contend that the Felon Restriction is "overbroad because" it "prohibit[s] entire classes of people from engaging in political expression by participating in voter registration efforts with the League" Plaintiffs. Doc.1 ¶ 113. That is incorrect.

Again, the restriction doesn't touch speech, so Plaintiffs' overbreadth challenge fails. But putting that aside, and taking a look at "what" the restriction "covers," *Hansen*, 143 S. Ct. at 1940, the Felon Restriction concerns a subset of felony convictions. Those felonies involve flouting the Election Code, taking advantage of vulnerable populations, committing extremely violent offenses (which do not result in the automatic restoration of voting rights under Amendment 4), and engaging in deceit. The restriction doesn't prevent excluded felons from conducting registration activities. They just can't collect or handle completed voter-registration forms.

Plaintiffs argue that the restriction "applies to potential volunteers who have been convicted of crimes that provide no indication they are likely to commit fraud or otherwise dishonestly register voters on behalf of the League" Plaintiffs. Doc.27 at 47-48. Plaintiffs, in essence, argue that felony convictions for sexual offenses and murder shouldn't be included in the Felon Restriction. But for those convicted of these felonies, their voting rights are not automatically restored under Amendment 4 and may not be

ever restored, absent clemency. *See* Fla. Const. art. VI, § 4(b). As with the justification for SB7050's citizen-volunteer restriction, voters should control Florida's voting processes. Moreover, felony sexual offenses and murder are serious enough offenses to doubt an individual's ability to handle sensitive and personal voting information; if you don't respect bodily integrity and life, you probably won't respect someone else's drivers license number or identification card number—the opposite of what a fiduciary should be doing.

Plaintiffs also argue that the restriction applies "to people with decades-old convictions and those whose rights have been restored." Doc.27 at 47-48. That's true as far as it goes. But "people with decades-old convictions" may still disrespect the Election Code, take advantage of vulnerable populations, and have veracity issues, and may still not have their voting rights restored. The restriction on "those whose rights have been restored" doesn't make the Felon Restriction's sweep unconstitutional. "[P]erfection is not required." *Cheshire Bridge Holdings*, 15 F.4th at 1378.

Like their free-speech and free-association claims, Plaintiffs' overbreadth claim must fail as well.

### 4.   Plaintiffs' Vagueness Claim Fails.

"Facial vagueness occurs when a statute is utterly devoid of a standard of conduct so that it simply has no core and cannot be validly applied to any conduct." *High Ol' Times, Inc. v. Busbee*, 673 F.2d 1225, 1228 (11th Cir. 1982). In other words, "[v]agueness arises when a statute is so unclear as to what conduct is applicable that persons of

common intelligence must necessarily guess at its meaning and differ as to its application." *Indigo Room, Inc. v. City of Fort Myers*, 710 F.3d 1294, 1301 (11th Cir. 2013). This is a high bar. *Sistersong Women of Color Reprod. Just. Collective v. Governor of Ga.*, 40 F.4th 1320, 1327 (11th Cir. 2022).

Here, Plaintiffs assert a facial vagueness challenge against the Felon Restriction. They argue that the restriction "contains no exceptions for individuals who have been convicted of the felony offenses specified in the statute but who had their civil and voting rights restored by Amendment 4 or who have received a pardon from the Governor," and that it's "not clear from the text of SB 7050 whether or how" the restriction "applies to voter registration volunteers who have been convicted of comparable felonies in federal court or other states." Doc.1 ¶¶ 124-25. Plaintiffs also claim that the terms "collect[]" and "handle[]" in the restriction are undefined and vague, and raise questions about how the Felon Restriction interacts with § 97.0575's registration-agents provision. Doc.1 ¶ 126.

Plaintiffs' arguments, however, don't get them far. A vagueness challenge turns on whether a statutory provision has an understandable core. *High Ol' Times*, 673 F.2d at 1228. The Felon Restriction has one. It lists specific felony offenses. The restriction doesn't include any vague offenses, like loitering. *City of Chicago v. Morales*, 527 U.S. 41, 45 (1999). The restriction is clear.

The meanings of "collect[]" and "handle[]" are also clear. "[A] statute is not ambiguous merely because it contains a term without a statutory definition." *United*

*States v. Sepulveda*, 115 F.3d 882, 886 n.9 (11th Cir. 1997). "[C]ollect" is commonly understood to mean "to gather" "from a number of persons." *Merriam-Webster's Collegiate Dictionary* 243 (11th ed. 2005). "[H]andle" ordinarily means "to manage with the hands." *Merriam-Webster's Collegiate Dictionary* 565 (11th ed. 2005); *see The American Heritage Dictionary* 796 (5th ed. 2018) (same).

Both words thus require some physical custody. The physical custody requirement becomes clearer still when considering the words together. For example, a postal worker who "collects" letters from mailboxes takes physical possession of the letters. She continues to "handle" the letters on behalf of the senders until she gives them to the recipient or another postal worker responsible for processing the letters.

"Person[s] collecting or handling voter registration applications on behalf of [3PVROs]" are much like the postal worker. *See* Fla. Stat. § 97.0575(5)(a); *see also* Fla. Stat. § 97.053 (providing an avenue for the "hand deliver[y]" of voter-registration forms by the applicant or a "third party"). They "collect" physical forms directly from applicants, and continue to "handle" the physical forms on behalf of the applicants until taking the forms to the Division of Elections, the supervisor of elections for the county in which the applicant resides, or to another agent of the 3PVRO responsible for actually delivering the forms to election officials.

All told, the statute provides people of reasonable intelligence with notice of what "collecting or handling" voter-registration forms means: physically collecting or

handling completed voter-registration forms—not *blank* forms—or otherwise exercising custody over completed forms.

To the extent that Plaintiffs harbor doubts about the meaning of the statute because the word "handle" can also mean "to have overall responsibility for supervising or directing," *Merriam-Webster's Collegiate Dictionary* 565 (11th ed. 2005), they ignore the statute's context. The statutory prohibition applies to "collecting or handling *voter registration applications*," Fla. Stat. § 97.0575(1)(e) (emphasis added), not collecting or handling *persons* who collect or handle voter-registration forms.

It also bears noting that the Department of State's rulemaking further allays any doubts as to the meanings of "collect" and "handle":

> [F]or purposes of section 97.0575(1)(e)-(f), F.S., means physically exercising custody over voter registration applications containing a voter's personal information. It does not include distributing blank voter registration applications, supervising the collecting or handling of voter registration applications, assisting a voter who requests assistance to fill out their voter registration application, or facilitating the voter to register electronically through registertovoteflorida.gov.

Doc.86-8 at 1; Fla. Admin. Code. R. 1S-2.042(3)(c).

Plaintiffs' other concerns are meritless. They contend that the Felon Restriction "contains no exceptions for individuals who have been convicted of the felony offenses specified in the statute but who have had their civil and voting rights restored by Amendment 4 or who have received a pardon from the Governor." Doc.1 ¶ 124. But this exception and argument has nothing to do with whether SB7050 is vague.

Plaintiffs also contend that it's "not clear from the text of SB 7050 whether or how" the restriction "applies to voter registration volunteers who have been convicted of comparable felonies in federal court or other states." Doc.1 ¶ 125. But this argument—as well as Plaintiffs' argument concerning how the Felon Restriction interacts with the registration-agents provision of § 97.0575—rings more of an as-applied argument than a facial argument. *Sistersong*, 40 F.4th at 1328. This doesn't make the restriction facially vague.

In sum, Plaintiffs' vagueness claim, like all of their claims, fails.

## V. Conclusion

For the foregoing reasons, this Court should enter summary judgment as to the League Plaintiffs' free-speech, free-association, overbreadth, and vagueness claims against the Felon Restriction.

Dated: January 18, 2024

Bradley R. McVay (FBN 79034)
brad.mcvay@dos.myflorida.com
Joseph Van de Bogart (FBN 84764)
joseph.vandebogart@dos.myflorida.com
Ashley Davis (FBN 48032)
ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough St.
Tallahassee, FL 32399
(850) 245-6536

Respectfully submitted,

*/s/ Mohammad O. Jazil*
Mohammad O. Jazil (FBN 72556)
mjazil@holtzmanvogel.com
Joshua E. Pratt (FB 119347)
jpratt@holtzmanvogel.com
Michael Beato (FBN 1017715)
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938

John J. Cycon (NYBN 5261912)*
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK
15405 John Marshall Hwy
Haymarket, VA 20169
Telephone: (212) 701-3402
jcycon@holtzmanvogel.com

*Counsel for Secretary Byrd*

*Admitted pro hac vice*

**<u>Certificate of Compliance</u>**

I certify that the summary-judgment memorandum is 6,127 words, which is under the 8,000-word limit in Local Rule 56.1(B). I also certify that this document complies with the typeface and formatting requirements in Local Rule 5.1.

*/s/ Mohammad O. Jazil*
Mohammad O. Jazil

**<u>Certificate of Service</u>**

I certify that on January 18, 2024, this document was uploaded to CM/ECF, which sends the document to all counsel of record.

*/s/ Mohammad O. Jazil*
Mohammad O. Jazil
