IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

LEAGUE OF WOMEN VOTERS OF
FLORIDA, INC., et al.,

    *Plaintiffs*,

v().                                           Case No.: 4:23cv216-MW/MAF

CORD BYRD, in his official capacity
as Florida Secretary of State, et al.,

    *Defendants*.
_____/

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

This Court has considered, without hearing, Defendant Byrd's motion for partial summary judgment with respect to Plaintiffs' challenges to the "Felon Ban," section 97.0575(1)(e), Fla. Stat. (2023), ECF No. 87, and Plaintiffs' response in opposition, ECF No. 94. For the reasons set out below, Defendant is entitled to summary judgment with respect to these claims, because Plaintiffs have not demonstrated a genuine dispute of material fact with respect to their standing to challenge section 97.0575(1)(e).

Plaintiffs assert the new "Felon Ban" for individuals who collect or handle voter registration applications on behalf of 3PVROs violates the First and Fourteenth Amendments for multiple reasons. The challenged provision identifies certain

disqualifying convictions, including felony violations of the Election Code and felonies in violation of specific chapters of the Florida Statutes. *See* § 97.0575(1)(e), Fla. Stat. (2023). Plaintiffs are on the hook for $50,000.00 for each person who has been convicted of one of these specified offenses and who collects or handles voter registration applications on Plaintiffs' behalf. *Id*. Defendant has moved for summary judgment on the merits of Plaintiffs' challenges to the "Felon Ban" and with respect to Plaintiffs' standing to challenge the "Felon Ban." Given that Plaintiffs have come forward with no evidence to create a genuine dispute of material fact with respect to their standing to challenge the "Felon Ban," this Court need not reach Defendant's arguments on the merits.

I

Summary judgment is appropriately granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Facts are "material" with respect to the substantive law if they form disputes that are not "irrelevant or unnecessary" and have the potential to "affect the outcome of the suit." *Id*. A nonmoving party's failure to provide sufficient evidence of an element for which it bears the burden of proof at trial mandates the entry of summary judgment

for the moving party, "since a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As it must, this Court accepts the facts in the light most favorable to the nonmovant, *see Galvez v. Bruce*, 552 F.3d 1238, 1241 (11th Cir. 2008), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007).

Here, Plaintiffs bear the burden of proving their standing at each stage in this case. As set out in more detail below, Plaintiffs have failed to come forward with sufficient evidence to establish that they have suffered a cognizable injury-in-fact for purposes of demonstrating standing to challenge the "Felon Ban."

II

Over time, the Supreme Court has developed a three-part test for determining when standing exists. Under that test, a plaintiff must show (1) that they have suffered an injury-in-fact that is (2) traceable to the defendant and that (3) can likely be redressed by a favorable ruling. *See Lujan*, 504 U.S. at 560–61. When standing is called into question at the summary-judgment stage, "the plaintiff can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken as true." *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1283 (11th Cir. 2019) (citation and quotation marks omitted). "At the summary-judgment stage, the burden

3

to establish standing is satisfied only if affidavits or other submissions indicate that a genuine issue of material fact exists concerning standing." *Id*.

With respect to the Felon Ban, Defendant asserts that Plaintiffs lack standing for three reasons. First, Plaintiffs' injuries are self-imposed. Second, Plaintiffs have not established associational standing because their theory of associational injury under the "Felon Ban" is entirely speculative. Third, Plaintiffs have not demonstrated that they are injured under a diversion-of-resources theory.

In response, Plaintiffs argue that they have been directly injured because they have been "compel[ed] . . . to stop . . . paper-registration drives to avoid liability." ECF No. 94 at 14. As a result, this has "deprive[d]" Plaintiffs of their "chief means of advocacy." *Id*. at 16 (citation and internal quotation marks omitted). And this has required Plaintiffs to divert resources to respond to the "Felon Ban" with their new mode of online registration. Plaintiffs also assert they have associational standing because the "Felon Ban" prevents their members from "associating with volunteers or other members with covered felony convictions." *Id*. at 24. But Plaintiffs retread several arguments that this Court rejected at the preliminary-injunction stage, and the evidence they have filed in opposition to Defendant's motion fails to create a genuine dispute as to whether Plaintiffs or their members have suffered a cognizable injury.

4

For starters, Plaintiffs' fears of incurring liability under the "Felon Ban," and Plaintiffs' reorganization of its registration efforts in response to these fears, are based on speculation that they have members or volunteers with disqualifying convictions. But Plaintiffs' evidence demonstrates that they steadfastly refuse to determine whether any members or volunteers actually have disqualifying felony convictions under the "Felon Ban," and thus, Plaintiffs ask this Court to simply assume that they risk violating the "Felon Ban" by virtue of the population that they serve. *See e.g.*, ECF No. 94 at 24 ("[I]f LWVFL leaders learn that a member has been convicted of a felony, they do not ask about the nature of the crime, which is why LWVFL has not identified specific members with convictions that would be covered by the Restriction."); ECF No. 93-1 ¶ 13 ("Asking new potential members or volunteers for details about their convictions, some of which are decades old, would be deeply disrespectful and alienating. And it would go against the League's values to treat some people as less trustworthy than others just because they've been convicted of a particular offense."); ECF No. 93-12 ¶ 4 ("I understand that some LWVFL members have past felony convictions though I personally do not know which members. I do not know if these convictions are prohibited by the felony volunteer restriction, and I do not plan on asking for details because . . . I feel that it would harm my relationship with members and harm their perception of the League's inclusivity and acceptance of all.").

To the extent Plaintiffs' members are aware of the nature of some members' felony convictions, they have offered no evidence to demonstrate that these individuals' convictions are among the disqualifying felonies set out in the challenged provision. *See, e.g.*, ECF No. 93-1 ¶ 11 ("I've worked with people I know to have felony convictions for decades . . . . Some have disclosed the nature of their convictions, but only after we became friends through our work with the League.").

Nonetheless, based on their speculative fears of violating the "Felon Ban," Plaintiffs have chosen to shift their 3PVRO operation from paper-application registration to online registration. This is so, even though Plaintiffs have come forth with zero evidence demonstrating that any of the Plaintiffs' members or volunteers or prospective members have a disqualifying felony conviction. To the extent Plaintiffs assert that this shift to online registration amounts to a direct, cognizable injury to Plaintiffs or is sufficient to establish a diversion-of-resources injury, Plaintiffs are mistaken. Given Plaintiffs' refusal to conduct background checks or otherwise inquire into their members or volunteers' criminal history, Plaintiffs have no way to know if any of their members or volunteers have been convicted of any disqualifying felonies unless their members or volunteers offer up that information freely. But even when an individual has voluntarily provided information pertaining to the nature of their conviction, Plaintiffs have not said whether they have a disqualifying conviction. Absent any evidence to demonstrate the Plaintiffs'

6

members or volunteers include individuals with disqualifying felony convictions, Plaintiffs' decision to cease paper-registration activities to avoid the hefty fine attendant to violating the "Felon Ban," amounts to only a self-imposed injury based on the speculative fear that they may become liable for violating the "Felon Ban."

Plaintiffs also argue that even if they "could resume paper registration activities," the challenged provision "would cause direct harm," because they would have to begin conducting background checks and excluding members from some of their activities. ECF No. 94 at 18. But this is nothing more than a hypothetical injury that, based on Plaintiffs' evidence, is not imminent. In short, Plaintiffs have offered no evidence to permit the reasonable inference that they plan to implement paper registration activities at any point in the future or that they have taken any steps toward conducting background checks for their members or volunteers.

Plaintiffs' suggestion that they diverted resources in other ways to address the "Felon Ban" is unsupported by the evidence Plaintiffs submitted in response to Defendant's motion. For example, Plaintiffs point to an agenda of their Board of Directors meeting from last July, after SB 7050 went into effect, to argue that they have diverted time away from discussing other organizational priorities to addressing the "Felon Ban." But neither the email nor the agenda contained therein mention the "Felon Ban." Instead, Ms. Scoon's "main talking points" related to other aspects of the new package of election laws, but *not* the "Felon Ban." *See* ECF No.

7

93-18 at 2–3. In addition, Ms. Scoon's declaration continues to describe her personal diversion of time to advocate against SB 7050 as a whole, rather than setting out how her time and resources have been diverted to specifically address the "Felon Ban." *See* ECF No. 94 at 23 (citing ECF No. 93-1 ¶ 30). This Court previously rejected this argument at the preliminary-injunction stage and does so here as well, as this evidence fails to give rise to a genuine dispute of material fact with respect to Plaintiffs' asserted injury-in-fact. *See* ECF No. 46 at 17 ("They rely on generalizations with respect to the diversion itself and with respect to the reason for the diversion.").

And to the extent Plaintiffs suggest that having to inquire whether their members or volunteers have a disqualifying felony conviction constitutes a direct injury because it would violate their organizations' values, Plaintiffs have cited no case recognizing such a theory of direct injury for purposes of standing. Instead, Plaintiffs appear to push for the creation of a vast new theory of injury that is entirely inconsistent with the Eleventh Circuit's standing jurisprudence. Plaintiffs' alternative argument—that the "Felon Ban" compels Plaintiffs to speak the State's message that people with certain felony convictions cannot be trusted—similarly fails. In support of the argument that Plaintiffs will suffer a compelled speech injury, Plaintiffs cite a single case addressing a disclaimer requirement under Georgia law. *See* ECF No 94 at 19 (citing *VoteAmerica v. Raffensberger*, 609 F. Supp. 3d 1341

8

(N.D. Ga. 2022)). But the problem with Plaintiffs' argument—as this Court recently ruled in another case—is that the plain language of the provision at issue does not command Plaintiffs to disseminate the State's message. *See Alachua Cnty. Ed. Ass'n v. Rubottom*, Case No.: 1:23cv111-MW/HTC, 2023 WL 4188197, at *2–3 (N.D. Fla. June 26, 2023) (noting that challenged provision did not command Plaintiffs to speak the State's message and "Plaintiffs could identify no case holding that such a *de facto* command, absent a statutory command, amounted to compelled speech"). Moreover, Plaintiffs have not brought a compelled speech claim.

Finally, based on the undisputed facts in the record, Plaintiffs' asserted associational injury is also speculative. Plaintiffs argue that their members are injured because the "Felon Ban" will burden the associational rights of their members and prevent them from working with individuals who have disqualifying felony convictions. But, as this Court noted above, Plaintiffs' evidence fails to demonstrate that any current or prospective member or volunteer has a disqualifying felony conviction. At this juncture, Plaintiffs again ask this Court to simply assume that their members will no longer be permitted to associate with individuals with certain felony convictions, even though Plaintiffs have offered no proof that such

9

hypothetical individuals with disqualifying convictions are among their current or prospective members or volunteers.[1]

To be clear, Plaintiffs' asserted injury would not be purely speculative if the challenged provision applied to *all* felony convictions. If that were the case, Plaintiffs' evidence would establish a genuine dispute as to whether Plaintiffs' members were subject to the provision, and thus, injured by it. But that is not this case. Nonetheless, this Court is not holding Plaintiffs to an impossible burden. All Plaintiffs had to do was identify a single member with a disqualifying felony conviction who had collected or handled voter registration applications in the past and planned to do it now but for the challenged provision. Plaintiffs were not required to reveal the identity of this member, but they were required to show that their members or prospective members who wished to engage in voter registration work on behalf of Plaintiffs face an imminent injury under this provision by virtue of a member's disqualifying felony conviction. Having failed to do so, Defendant is entitled to summary judgment with respect to these claims.

For these reasons, because no genuine dispute of material fact exists with respect to Plaintiffs' lack of standing to challenge section 97.0575(1)(e), Fla. Stat.

---

[1] This Court rejected this argument at the preliminary-injunction stage when Plaintiffs also failed to submit any evidence indicating whether any members or volunteers with disqualifying felony convictions were planning to engage in voter registration work but for the challenged provision. *See* ECF No. 46 at 14–16.

(2023), Defendant's motion for summary judgment with respect to Plaintiffs' claims challenging the "Felon Ban," ECF No. 87, is **GRANTED**. Plaintiffs lack standing to challenge section 97.0575(1)(e), Fla. Stat. (2023) as to Counts One, Two, Three, and Four in their Complaint, ECF No. 1. This Court does *not* direct entry of partial judgment pursuant to Rule 54(b), but instead, this Court will dismiss these claims for lack of standing when this Court enters final judgment at the conclusion of this case.

**SO ORDERED on February 13, 2024.**

<u>s/Mark E. Walker</u>
**Chief United States District Judge**