IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

FLORIDA STATE CONFERENCE OF
BRANCHES AND YOUTH UNITS OF
THE NAACP, et al.,

    *Plaintiffs*,

v.

Case No. 4:23-cv-215-MW/MAF
Case No. 4:23-cv-216-MW/MAF
Case No. 4:23-cv-218-MW/MAF
(consolidated)

CORD BYRD, in his official capacity as
Florida Secretary of State, et al.,

    *Defendants*.
_____/

## THE SECRETARY'S MOTION TO RECUSE

Secretary of State Cord Byrd moves this Court to recuse itself from the consolidated SB7050 cases, for the reasons expressed below.

**Memorandum**

Secretary of State Cord Byrd moves to recuse this Court from these consolidated cases under 28 U.S.C. § 455(a) and (b)(1). On February 8, 2024, this Court issued an order in *League of Women Voters of Florida v. Florida Secretary of State*, Case Nos. 4:21-cv-186, 187, 201 (N.D. Fla. Feb. 8, 2024), stating that:

> [T]he State of Florida has, with surgical precision, repeatedly changed Florida's Election Code to target whichever modality of voting Florida's Black voters were using at the time. That was not this Court's opinion—it is a fact established by the record in these cases. Even so, following the State of Florida's appeal, this persistent and pernicious practice of targeting the modalities of voting most used by Florida's Black voters has apparently received the stamp of approval in this Circuit.

Case No. 4:21-cv-201, Doc.356 at 16-17. Like the instant consolidated cases, *League of Women Voters* concerned changes to the State's statute governing third-party voter registration organizations. *Id.* at 2 n.3 (referencing Florida Statute section 97.0575). And, like the instant cases, *League of Women Voters* included allegations of intentional discrimination leveled against the Florida Legislature. *Compare League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 66 F.4th 905, 921-22 (11th Cir. 2023), *with Fla. State Conf. of Branches & Youth Units of the NAACP v. Byrd*, Case No. 4:23-cv-215, Doc.184 at Count V.

Given the February 8, 2024 statements, however, this Court's "impartiality might reasonably be questioned" when it assesses claims of intentional discrimination in these election-related cases. 28 U.S.C. § 455(a). That's because this Court has already said that the State has "repeatedly changed Florida's Election Code" to "target" Black voters,

2

though the Eleventh Circuit disagreed. Case No. 4:21-cv-201, Doc.356 at 16-17. And this Court has already said that it knows of a "persistent and pernicious practice" of targeting Black voters—of discrimination that's continuing, enduring, and harmful. *Id.* "[I]t is a fact," said this Court, *id.* at 16, though the Eleventh Circuit concluded that the record in *League of Women Voters* did not support a factual finding of intentional discrimination; the Eleventh Circuit held that this Court's "findings of intentional racial discrimination rest[ed] on both legal errors and clearly erroneous findings of fact." *League of Women Voters*, 66 F.4th at 919. Because the record in *League of Women Voters* cannot support a finding of "persistent and pernicious" discrimination, maybe this Court has "personal knowledge of disputed evidentiary facts concerning the proceeding," namely the claims of intentional discrimination. 28 U.S.C. § 455(b)(1). Or this Court was just upset. Regardless, recusal is appropriate under § 455(a) or (b)(1).

To be sure, the bar for recusal is high. Out-of-court statements and relationships usually serve as the basis for recusal. In *United States v. South Florida Water Management District*, 290 F. Supp. 2d 1356, 1361 (S.D. Fla. 2003), for example, the judge gave interviews to a newspaper in which he expressed an opinion on legislation affecting the case before him. But there's no rule limiting recusal to such instances. The analysis turns on whether a reasonable observer might perceive this Court to have a "fixed opinion, a closed mind" on the discriminatory-intent issue. *United States v. Haldeman*, 559 F.2d 31, 136 (D.C. Cir. 1976). "[W]hat matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994).

3

The appearance of prejudice resulted in vacatur of a criminal conviction and recusal of the judge in *United States v. Liggins*, 76 F.4th 500, 502 (6th Cir. 2023). The judge in *Liggins* "got mad" and was "upset" with a defendant, *id.* at 504, during a hearing on a motion to change counsel for a second time, and after the defendant had suggested (on multiple occasions) that he intended to enter a guilty plea only to change his mind, *id.* at 503. While upset, the judge said "[t]his guy looks like a criminal to me," and that "[t]his is what criminals do." *Id.* Nearly two years later, "[t]he day before trial was scheduled to begin," the defendant, who was Black, moved to recuse the judge. *Id.* at 504. The judge denied the motion though he did apologize for his comments, explaining that he "lost [his] head" in the moment and that he was not "biased" against the defendant. *Id.* Nevertheless, the Sixth Circuit held that the judge should have recused himself to uphold the "public's confidence in the judicial process." *Id.* at 509; *see also Liteky*, 510 U.S. at 555 (explaining that the judge in *Berger v. United States*, 255 U.S. 22, 28-29 (1921), who allegedly said that the "hearts" of German-American defendants were "reeking with disloyalty," should have recused himself from the case to preserve the appearance of impartiality).

So too here. In the February 8, 2024 order, this Court doubled down on a claim of "persistent and pernicious practice[s]" "targeting" Black voters, even after the Eleventh Circuit had reversed such a finding. It doesn't matter whether this Court shared this view with the press through some interview or whether this Court has ruled for the State of Florida in other election cases (or even in the February 8, 2024 order

4

itself). This Court's statements, concerning a live issue in these consolidated cases, suggest a lack of impartiality especially when the evidence to be presented must overlap with *League of Women Voters*; Plaintiffs in these consolidated proceedings must prove that the State of Florida intentionally targeted third-party voter registration organizations because Black voters prefer to use them. But this Court has seemingly concluded that the State of Florida engages in discrimination against Black voters. On the discriminatory-intent issue, therefore, this Court appears to have a closed mind.

So, left with little choice, the Secretary moves to recuse.

Dated: February 19, 2024

Respectfully submitted,

/s/ *Bradley R. McVay*
Bradley R. McVay (FBN 79034)
brad.mcvay@dos.myflorida.com
Joseph Van de Bogart (FBN 84764)
joseph.vandebogart@dos.myflorida.com
Ashley Davis (FBN 48032)
ashley.davis@dos.myflorida.com
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough St.
Tallahassee, FL 32399
(850) 245-6536

/s/ *Mohammad O. Jazil*
Mohammad O. Jazil (FBN 72556)
mjazil@holtzmanvogel.com
Joshua E. Pratt (FBN 119347)
jpratt@holtzmanvogel.com
Michael Beato (FBN 1017715)
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 S. Monroe St. Suite 500
Tallahassee, FL 32301
(850) 270-5938

**Local Rule 7.1(F) Certification**

Under Local Rule 7.1(F), this memorandum contains 983 words, excluding the case style, signature block, and any certificate of service.

> */s/ Mohammad O. Jazil*
> Mohammad O. Jazil

**Local Rule 7.1(C) Certification**

Under Local Rule 7.1(C), on February 19, 2024, counsel for the Secretary conferred with counsel for the *NAACP* Plaintiffs, the *League* Plaintiffs, and the *Hispanic Federation* Plaintiffs. They oppose this motion.

> */s/ Mohammad O. Jazil*
> Mohammad O. Jazil

**Certificate of Service**

I hereby certify that on February 19, 2024, I electronically filed the foregoing with the Clerk of Court by using CM/ECF, which automatically serves all counsel of record for the parties who have appeared.

> */s/ Mohammad O. Jazil*
> Mohammad O. Jazil